No. 18          April 18, 2013          465

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Request for Amendment #2
of the Site Certificate for the Helix Wind Power Facility.

THE BLUE MOUNTAIN ALLIANCE;
Norm Kralman; Richard Jolly;
Dave Price; Robin Severe;
and Cindy Severe,
*Petitioners*,

*v.*

ENERGY FACILITY SITING COUNCIL;
and Site Certificate Holder Helix Windpower Facility, LLC,
*Respondents*.

(S060803)

En Banc

On judicial review from an order of the Energy Facility Siting Council.*

Argued and submitted January 7, 2013.

Daniel Kearns, Reeve Kearns PC, Portland, argued the cause and filed the brief for petitioners.

Michael Casper, Assistant Attorney General, Salem, argued the cause for respondent Energy Facility Siting Council. Denise G. Fjordbeck, Attorney-in-Charge, Salem, filed the brief for respondent Energy Facility Siting Council. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

James N. Westwood, Stoel Rives LLP, Portland, filed the brief for respondent Helix Wind Power Facility LLP. With him on the brief were David E. Filippi and Elaine R. Albrich.

Dina M. Dubson, Renewable Northwest Project, Portland, filed the brief for *amici curiae* Renewable Northwest Project and American Wind Energy Association. With her on the brief was Megan W. Decker.

_____

* Appeal from a Final Order of the Energy Facility Siting Council dated August 24, 2012, W. Bryan Wolfe, Chair.

BALDWIN, J.

The Final Order Denying a Contested Case Proceeding and Approving Amendment #2 of the Energy Facility Siting Council is affirmed.

**BALDWIN, J.**

This case challenges a final order of the Energy Facility Siting Council (council) approving an amended site certificate for construction of a wind energy facility.[1] The central question on review is whether, in approving the amended site certificate, the council correctly declined to require compliance with a recently adopted county ordinance requiring a two-mile setback between wind turbines and rural residences pursuant to ORS 469.401(2). For the reasons set out in this opinion, we conclude that the council did not err in not requiring compliance with the ordinance. We further conclude that the council did not err in denying petitioners' requests for a contested case proceeding. We therefore affirm the council's final order approving the amended site certificate.

## I.  FACTS AND BACKGROUND

The following facts are taken from the council's Final Order Denying a Contested Case Proceeding and Approving Amendment #2. In July 2009, the council issued a site certificate for the Helix Wind Power Facility, permitting up to 60 wind turbines covering 7,586 acres on private land in Umatilla County, northwest of Helix, Oregon. The site certificate holder is Helix Wind Power Facility LLC (Helix), also a respondent in this proceeding. The certificate included conditions to begin construction within three years and then complete construction within three years. The statutory process under which the council issued the original site certificate is generally described in *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 356-57, 121 P3d 1141 (2005). In June 2011, the council issued a final order approving Amendment #1, expanding the size of the facility to include 134 turbines, covering 20,613 acres.

On February 3, 2012, Helix applied for Amendment #2, seeking to extend the construction start and completion dates by two years. In response, the Oregon Department of Energy (ODOE) posted public notice of the amendment

---

[1] ORS 469.403(3) grants this court jurisdiction for judicial review of the council's approval or rejection of a site certificate application or amendment; ORS 469.405(1) additionally provides that judicial review of an amended site certificate shall be as provided in ORS 469.403.

request and sent notice to various other persons and entities, including a list of residential owners within two miles of the site boundary and a special advisory group consisting of the Umatilla County Board of Commissioners (board). The council received multiple comments, and Helix responded to those comments. Following internal analysis, ODOE issued a proposed order, together with public notice setting a deadline for public comments and requests for a contested case proceeding.

In May 2012, the council held a listening session and received public comments. The council also received multiple written public comments and several requests for a contested case proceeding. Among other issues, public testimony and comments highlighted a Umatilla County ordinance—Ordinance 2012-04, adopted February 28, 2012—that required a two-mile setback between wind turbines and rural residences. Petitioners contended that the ordinance had been adopted as a public health and safety measure and submitted materials intended to show that noise implications from turbines posed a "significant threat" to public health and safety and that a setback of less than two miles would not adequately protect against turbine noise. Petitioners requested that the council require the facility to comply with the ordinance.[2]

In August 2012, ODOE staff presented a recommendation on Amendment #2 to the council ("ODOE staff report" or "report"). ODOE staff recommended that the council not incorporate Ordinance 2012-04 in its analysis whether the facility, with Amendment #2, complied with statewide planning goals under ORS 469.504(1) and also not require compliance with the ordinance in Amendment #2 under ORS 469.401(2). The report specifically treated Ordinance 2012-04 as a "land use regulation[]" to be

---

[2] In 2011, the county had adopted a similar ordinance, which was appealed to the Land Use Board of Appeals (LUBA). LUBA remanded, and the county then updated the wording consistently with LUBA's decision and adopted it as Ordinance 2012-04 in February 2012. Later in this opinion, we discuss the specific provisions of the original version of Ordinance 2012-04 and a revised, codified version dated August 16, 2012. For ease of reference throughout this opinion, we refer to "Ordinance 2012-04," not to its codification.

evaluated under ORS 469.504(1), instead of as a "public health and safety" measure to be evaluated under ORS 469.401(2). The report additionally cited the council's earlier approval of a smaller, 1/4-mile setback between wind turbines and residences in another, unrelated proceeding and an applicable noise-related "public health setback" with a distance that may exceed 1/4-mile, as adopted by the Oregon Department of Environmental Quality (ODEQ).[3] The report also observed that the council previously had determined that the facility complied with ODEQ noise regulations and that the time extension request did not implicate that finding. Finally, the report recommended that the council deny petitioners' requests for a contested case proceeding under OAR 345-027-0070(7).

On August 24, 2012, the council issued its final order approving Amendment #2 and incorporating the ODOE staff recommendations. Among other things, the final order (1) stated that the council had considered all public and reviewing agency comments and requests for a contested case proceeding; (2) determined that Ordinance 2012-04 did not apply to the council's determination whether the facility complied with statewide planning goals under ORS 469.504(1); (3) applied ODEQ noise control regulations as part of determining that the facility complied with administrative rules identified in the original project order; (4) adopted an ODOE staff recommendation to not require compliance with Ordinance 2012-04 under ORS 469.401(2); (5) denied petitioners' requests for a contested case proceeding because they had raised no significant issues of fact or law under OAR 345-027-0070(7); and (6) ultimately concluded that the facility complied with applicable siting statutes, council standards, and other applicable state statutes and administrative rules. The final order granted Helix's time-extension request, subject to revisions set out in the order that are not at issue in this proceeding. Petitioners filed a petition for judicial review in this court. *See* ORS 469.405(1), ORS 469.403(3) (providing for such review).

_____

[3] *See* OAR 340-035-0035(1)(b)(B)(i) to (iii) (noise restrictions as to new industrial or commercial noise source generally and as to wind energy facilities).

## II.   PARTIES' ARGUMENTS

To frame the parties' arguments, we first set out the statutes at issue. In deciding whether to issue a site certificate or an amended site certificate, the council must make a series of determinations as to whether a preponderance of the evidence supports several conclusions. *See* ORS 469.503 (so providing). One such determination is whether the facility complies with statewide planning goals under ORS 469.503(4). ORS 469.504(1), in turn, establishes alternative means for the council to make that determination. *See Save Our Rural Oregon*, 339 Or at 366-69 (so explaining). The applicable alternative in this proceeding, set out in ORS 469.504(1)(b)(A), provides:

"(1)   A proposed facility shall be found in compliance with the statewide planning goals under ORS 469.503(4) if:

"* * * * *

"(b)   The Energy Facility Siting Council determines that:

"(A)   The facility complies with applicable substantive criteria from the affected local government's acknowledged comprehensive plan and land use regulations that are required by the statewide planning goals and in effect on the date the application is submitted, and with any Land Conservation and Development Commission administrative rules and goals and any land use statutes that apply directly to the facility under ORS 197.646[.]"

(Emphasis added.) That same analysis, including the "application submission date" requirement, applies to amended site certificates, OAR 345-027-0070(10).  Thus, the statute and the administrative rule establish a "goal-post" rule for consideration of criteria derived from the local government's comprehensive plan and land use regulations in relation to compliance with statewide planning goals. That "goal-post" rule is based on the application date of the facility site certificate or an amended site certificate. Here, Ordinance 2012-04 was adopted 25 days after the Amendment #2 application date.

The other statute at issue, ORS 469.401(2), sets out the required contents for a site certificate or an amended site certificate, once the council decides to issue it. That statute provides, in part:

> "The site certificate or amended site certificate shall contain conditions for the protection of the public health and safety, for the time for completion of construction, and to ensure compliance with the standards, statutes and rules described in ORS 469.501 and 469.503. The site certificate or amended site certificate shall require both parties to abide by local ordinances and state law and the rules of the council in effect on the date the site certificate or amended site certificate is executed, except that upon a clear showing of a significant threat to the public health, safety or the environment that requires application of later-adopted laws or rules, *the council may require compliance with such later-adopted laws or rules*."

(Emphasis added.) Under that statute, the council must require compliance with certain "local ordinances and state law and [council] rules" in effect on the date that the certificate is executed, and the council may require compliance with "later-adopted laws or rules" upon a clear showing of a "significant threat to the public health, safety or the environment" that requires application of the later-adopted law or rule. Here, Ordinance 2012-04 was adopted about six months before the council issued its final order approving Amendment #2; the amended site certificate has not yet been executed, pending this judicial review proceeding.

The parties' dispute requires that we construe the second statute, ORS 469.401(2)—specifically the two independent clauses in the second sentence[4]—and determine whether the council erred in not requiring compliance with Ordinance 2012-04 in Amendment #2. Petitioners contend that, notwithstanding ORS 469.504(1)(b)(A), Ordinance 2012-04 qualifies as a noise ordinance, bringing

---

[4] For ease of reference in this opinion, we refer to the first clause of the second sentence of ORS 469.401(2) as the "abide by local ordinances" clause and to the second clause as the "later-adopted laws" clause.

it within the "public health and safety" concepts generally set out in ORS 469.401(2). Petitioners specifically argue that Ordinance 2012-04 falls within the scope of the "abide by local ordinances" clause and that the council therefore erred when it did not require compliance with the ordinance in Amendment #2. Alternatively, petitioners argue that Ordinance 2012-04 falls within the scope of the "later-adopted laws" clause, petitioners satisfied the "significant threat" threshold, and the council should have required compliance with the ordinance in the exercise of its discretion. Finally, petitioners contend that the council erred in denying their requests for a contested case proceeding, regarding the opportunity to demonstrate that the ordinance qualified as a public health and safety measure and that a setback of less than two miles posed a significant threat to public health and safety.

The council and Helix instead begin the analysis with ORS 469.504(1)(b)(A), contending that Ordinance 2012-04 is a "land use regulation[]" under that statute. Because Ordinance 2012-04 was adopted after the Amendment #2 application date, the council and Helix assert that the council correctly concluded that the ordinance did not apply to the council's evaluation of applicable substantive criteria under ORS 469.504(1)(b)(A), in determining facility compliance with statewide planning goals. Next, the council and Helix contend that any ordinance that qualifies as a "land use regulation[]" under ORS 469.504(1)(b)(A) cannot also be considered an ordinance to which the "abide by local ordinances" clause of ORS 469.401(2) applies. Helix adds that, if ORS 469.401(2) were construed to require Helix to comply with an ordinance that qualifies as a land use regulation that became effective *after* the application date, that result would conflict with ORS 469.504(1)(b)(A), which only requires consideration of land use regulations *in effect* as of the application date. The council and Helix further contend that the council did not err in declining to require compliance with Ordinance 2012-04 in Amendment #2 under the "later-adopted laws" clause of ORS 469.401(2) or in denying petitioners' requests for a contested case proceeding.

II.   FIRST ASSIGNMENT OF ERROR:
ORS 469.401(2)—REQUIRED COMPLIANCE
WITH LOCAL ORDINANCES IN EFFECT
ON SITE CERTIFICATE EXECUTION DATE

A.  *Construction of "Abide by Local Ordinances" Clause of ORS 469.401(2)*

Before construing ORS 469.401(2), it is important to explain the operation of ORS 469.504(1)(b)(A). Again, that statute provides as follows:

"(1)   A proposed facility shall be found in compliance with the statewide planning goals under ORS 469.503(4) if:

"* * * * *

"(b)   The Energy Facility Siting Council determines that:

"(A)   The facility complies with *applicable substantive criteria from the affected local government's acknowledged comprehensive plan and land use regulations that are required by the statewide planning goals and in effect on the date the application is submitted*, and with any Land Conservation and Development Commission administrative rules and goals and any land use statutes that apply directly to the facility under ORS 197.646[.]"

(Emphasis added.) As noted earlier, the same process applies to amended site certificates, OAR 345-027-0070(10). In *Save Our Rural Oregon*, 339 Or at 361, this court explained the underlying purpose of ORS 469.504:

"Oregon's statewide land use planning goals, adopted by the Land Conservation and Development Commission (LCDC), set out broad objectives for land use planning in Oregon. Local governments implement those objectives in local comprehensive plans. ORS 197.225 to 197.250. ORS 469.503(4) provides that the council may not issue a site certificate approving [a site certificate application] unless the proposed facility complies with the statewide planning goals. ORS 469.504, in turn, provides the guidelines for determining whether the [site certificate application] complies with those goals."

Under the first part of ORS 469.504(1)(b)(A), the council must determine that the facility complies with

substantive criteria—derived from the local government's "acknowledged comprehensive plan and land use regulations"—that are (1) required by statewide planning goals; *and* (2) "in effect" on the certificate or amendment application date. In its final order, the council determined that the two-mile setback embodied in Ordinance 2012-04 was a "land use regulation[]" that should be evaluated under the "applicable substantive criteria" provision of ORS 469.504(1)(b)(A). However, the council further determined that the ordinance was not "in effect" on the Amendment #2 application date and therefore should not be included in the "applicable substantive criteria" used to determine whether the facility complied with the statewide planning goals. We agree with the council and Helix that the council was not required to consider the ordinance in its determination whether the facility complied with statewide planning goals because the ordinance was not "in effect" on the Amendment #2 application date. Petitioners do not appear to dispute that conclusion; instead, they principally rely on ORS 469.401(2), to which we now turn.

Again, ORS 469.401(2) provides, in part:

"The site certificate or amended site certificate shall contain conditions for the protection of the public health and safety, for the time for completion of construction, and to ensure compliance with the standards, statutes and rules described in ORS 469.501 and 469.503. *The site certificate or amended site certificate shall require both parties to abide by local ordinances and state law and the rules of the council in effect on the date the site certificate or amended site certificate is executed,* except that upon a clear showing of a significant threat to the public health, safety or the environment that requires application of later-adopted laws or rules, the council may require compliance with such later-adopted laws or rules."

(Emphasis added.) As noted earlier, petitioners rely on both clauses in the second sentence. Under the "abide by local ordinances" clause, they emphasize that Ordinance 2012-04 is a local ordinance that was "in effect" on the Amendment #2 execution date and the council therefore erred in not requiring compliance with that ordinance; alternatively, under the "later-adopted laws" clause, the ordinance should

be considered a "later-adopted law[]" and the council, in its discretion, should have required compliance with the ordinance.

We review for error of law. *See* ORS 183.482(8)(a) (court must determine whether agency "has erroneously interpreted a provision of law"); ORS 469.403(6) (ORS 183.482 applies to petition for judicial review of council's approval or rejection of site certificate or amended site certificate application); *see also Save Our Rural Oregon*, 339 Or at 360 (identifying statutory construction question as legal issue). To address petitioners' contentions, we employ our method of statutory construction set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to ascertain the legislature's intent. *See also State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (when construing statutes, court reviews statutory text and context, including related statutes).

We begin with the text of the "abide by local ordinances" clause of ORS 469.401(2), which provides:

"The site certificate or amended site certificate shall require both parties to abide by local ordinances and state law and the rules of the council in effect on the date the site certificate or amended site certificate is executed[.]"

That clause contains a timing trigger for requiring party compliance with local ordinances, state laws, and council rules: the site certificate must require compliance with ordinances "in effect" on the certificate execution date (with exceptions identified in the "later-adopted laws" clause), and Ordinance 2012-04 is presently "in effect" within that statutory meaning. *See* ORS 469.401(1) (after council approves site certificate or amended site certificate, council chairperson and applicant shall execute certificate with prescribed conditions; here, the site certificate with Amendment #2 has not yet executed, pending this judicial review proceeding). What is less clear, however, is the intended scope of the unmodified phrase, "local ordinances and state law and the rules of the council." That is, although petitioners infer that the clause refers to ordinances, laws, and rules that pertain to "public health and safety" in effect on the execution date—and although other parts of the

statute also use those same modifying words—the clause contains no wording to that effect. The council and Helix do not dispute that the phrase "local ordinances" in the clause may include ordinances relating to public health and safety; they contend, however, that any "local ordinance" that is a "land use regulation[]" under ORS 469.504(1)(b)(A) is *excluded* from the intended scope of the "abide by local ordinances" clause. Simply stated, although the clause appears unambiguous on its face, the parties point to contextual clues to support their conflicting constructions.

We first agree with the parties that, in referring to "local ordinances," the legislature intended the "abide by local ordinances" clause of ORS 469.401(2) to generally extend to local ordinances that serve to protect public health and safety. By way of context, the next clause of that same sentence—which is more narrowly drawn than the first— provides a "later-adopted" exception for "laws or rules" that pose a significant threat "to the public health, safety," or the environment. By setting out a subcategory of significant threat "to the public health [or] safety" that may justify application of "later-adopted" laws or rules, *contrasted against* laws or rules "in effect" on the certificate execution date, the "later-adopted laws" clause textually presumes that the preceding "abide by local ordinances" clause also extends to local ordinances, state law, and council rules that serve to protect public health and safety. A related statute, ORS 469.310, supports that construction, affirmatively stating as public policy that "the siting, construction and operation of energy facilities shall be accomplished in a manner consistent with protection of the public health and safety," among other considerations. That is not to say that the phrase "abide by local ordinances and state law and the rules of the council" in ORS 469.401(2) is *limited* to local ordinances, state laws, and council rules that protect public health and safety; the context indisputably shows, however, that the legislature intended the scope of that phrase to extend to ordinances that protect public health and safety.

Having construed the "abide by local ordinances" clause of ORS 469.401(2) as including—but not necessarily limited to—local ordinances, state laws, and council rules

that protect public health and safety, we turn to other parts of ORS chapter 469 to assist our understanding of the scope of the term "local ordinances" in that clause. As explained below, several chapter components describing the site certificate application and approval process clarify the legislature's intended meaning of that term as pertinent to our inquiry.

As to the initial site certificate application process, ORS 469.330(1) requires an applicant to submit to the council a notice of intent to file a site certificate application. Following review of the notice and a public comment period, ODOE must issue a project order that establishes the "statutes, administrative rules, council standards, *local ordinances*, application requirements and study requirements for the site certificate application." ORS 469.330(3) (emphasis added). After the applicant files the initial site certificate application and at the conclusion of a mandatory contested case proceeding, the council must issue a final order approving or rejecting the application. ORS 469.370(7). Under that statute, the council must base its approval on identified, council-adopted standards adopted under ORS 469.501 "and any additional statutes, rules or *local ordinances* determined to be applicable to the facility by the project order, as amended." (Emphasis added.) *See also generally* ORS 469.503(3) (before issuing certificate, council must determine whether facility complies with state statutes and administrative rules identified in project order as applicable to site certificate issuance).

Thus, the statutory scheme establishes that the process of drafting a project order and issuing a final order approving the site certificate application involves determining the "local ordinances" (and other provisions) that apply to the facility and with which an applicant must comply to obtain approval of its application. As part of that construct, ORS 469.401(2) logically is intended to require in the site certificate that the applicant comply with those same ordinances. Stated differently, given the statutory scheme, the reference in ORS 469.401(2) to "local ordinances and state law and the rules of the council in effect" on the certificate execution date logically refers to the ordinances, state law, and council rules that previously were determined

to apply to the facility in the course of developing the project order under ORS 469.330(3). *See also* ORS 469.401(2) (first sentence; site certificate must contain conditions to "ensure compliance with" statutes and rules described in ORS 469.503). Additionally, the phrase includes applicable ordinances, laws, and rules that may have become effective between the project order issuance date and the site certificate execution date—that is, provisions that, had they been in effect at the time that the project order issued, would have been included in that order under ORS 469.330(3). As previously discussed, those local ordinances, state laws, and rules may include—but are not limited to—public health and safety protections.

The council and Helix urge that ORS 469.504(1)(b)(A) provides necessary context for the proper construction of the "abide by local ordinances" clause of ORS 469.401(2)— specifically, the intended scope of any local ordinance subject to a compliance requirement in the site certificate. As discussed earlier, ORS 469.504(1)(b)(A) refers to applicable substantive criteria—derived from the local government's acknowledged comprehensive plan and "*land use regulations*" (emphasis added) in effect on the application date—that the council must consider in determining whether a facility complies with statewide planning goals. Essentially, the council and Helix argue that, because all applicable "land use regulations" fall within the scope of the council's determination of goal compliance under ORS 469.504(1)(b)(A), they cannot simultaneously fall within the scope of the "abide by local ordinances" clause of ORS 469.401(2), relating to certificate requirements. That is, the council's consideration of applicable "land use regulations" occurs at the point in time when the council determines whether a facility complies with statewide planning goals. By contrast, the council's consideration of other, nonland use laws, rules, and ordinances extends to other points in the siting process. The legislature intended the two concepts to remain separate, the council and Helix argue, in large part because of their different "trigger" dates—the application date in ORS 469.504(1)(b)(A) for land use regulations, and the certificate execution date in ORS 469.401(2) for other local ordinances, state laws and council rules. Otherwise,

the council could require compliance in a site certificate with a local "land use regulation[]" that was not in effect on the application date and that the council therefore had been precluded from considering for statewide planning goal compliance purposes under ORS 469.504(1)(b)(A).

We have explained that ORS 469.504(1)(b)(A) and ORS 469.401(2) serve different purposes and apply at different stages of the site certificate application process, which arguably undercuts the council's and Helix's contention that the statutes must operate in harmony, particularly as to their trigger dates. At the same time, however, those varying purposes and applications provide some helpful statutory context. Notably, ORS 469.504(1)(b)(A) applies to the central determination whether an application for a site certificate or amendment should be approved or rejected. Only after the council has decided to approve the application does it determine the required contents of the certificate under ORS 469.401(2). The subordinate nature of the council's determination of certificate contents under ORS 469.401(2), in relation to its central determination of application approval under ORS 469.504(1)(b)(A), suggests that the legislature intended ORS 469.401(2) to operate consistently with—and not to circumvent—ORS 469.504(1)(b)(A). *See generally Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979) ("whenever possible the court should construe together statutes on the same subject as consistent with and in harmony with each other"). That, in turn, supports the council's and Helix's contention that the "abide by local ordinances" clause in ORS 469.401(2) excludes ordinances that qualify as "land use regulations" under ORS 469.504(1)(b)(A).

Another part of ORS chapter 469 further supports that construction of ORS 469.401(2). ORS 469.503 requires that, in determining whether to issue a site certificate, the council must make a number of determinations about the facility. One such determination, as previously discussed, is whether the facility complies with statewide planning goals, ORS 469.503(4), pursuant to the alternative means provided in ORS 469.504(1). Another compliance determination is set out in subsection (3) of ORS 469.503, as follows:

"In order to issue a site certificate, the \*\*\* [c]ouncil shall determine that the preponderance of the evidence on the record supports the following conclusions:

"\*\*\*\*\*

"(3)  *Except as provided in ORS 469.504 for land use compliance* \*\*\*, the facility complies with all other Oregon statutes and administrative rules identified in the project order, as amended, as applicable to the issuance of a site certificate for the proposed facility. \*\*\*"

(Emphasis added.) That statute requires the council to determine that the facility complies with state statutes and rules previously determined to apply to the facility and therefore identified in the project order under ORS 469.330(3). As previously discussed, the reference in the "abide by local ordinances" clause of ORS 469.401(2) to "local ordinances and state law and the rules of the council" in effect on the certificate execution date means those provisions previously identified in the project order under ORS 469.330(3), together with other applicable provisions that may have become effective between the project order issuance and certificate execution dates. That is, the same state statutes and rules identified in the project order under ORS 469.330(3) and therefore subject to certificate compliance requirements in ORS 469.401(2) also are subject to a facility compliance determination under ORS 469.503(3).

Significantly, in setting out that compliance determination requirement, ORS 469.503(3) expressly distinguishes state statutes and rules that pertain to "land use compliance" based on the application date under ORS 469.504 from "all *other* Oregon statutes and administrative rules" previously identified in the project order. (Emphasis added.) Indeed, ORS 469.503(3) characterizes ORS 469.504— the statute that requires a compliance determination as to statewide planning goals that may include evaluation of the local government's comprehensive plan and "land use regulations"—as a "land use compliance" statute. That characterization demonstrates a legislative intention that

the council evaluate a provision of law or rule that qualifies as a "land use regulation[]" *only* under ORS 469.504(1), as part of the council's statewide planning goal determination under ORS 469.503(4).[5] By contrast, the legislature identified a separate category of "other" applicable provisions "identified in the project order" under ORS 469.330(3) that must be part of a separate compliance determination under ORS 469.503(3). And, as previously noted, the "abide by local ordinances" clause of ORS 469.401(2) in turn provides a mechanism for requiring compliance with such provisions (and similar provisions adopted after the project order but before execution of the site certificate) in the site certificate.[6] No aspect of the statutory context supports petitioners' competing construction.

In light of the statutory context, we conclude that the requirement in ORS 469.401(2) that a site certificate or amended site certificate must require compliance with "local ordinances and state law and the rules of the council in effect on the date the site certificate or amended site certificate is executed" does not include any ordinance, law, or rule that is a "land use regulation[]" for purposes of ORS 469.504(1)(b)(A).

---

[5] In *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 368, 121 P3d 1141 (2005), this court explained that "the statewide land use planning goals establish broad policy objectives, while the applicable substantive criteria provide specific ways of implementing those objectives through local regulation." (Internal quotations omitted.) Those "applicable substantive criteria," in turn, are derived from the affected local government's acknowledged comprehensive plan and land use regulations, ORS 469.504(1)(b).

[6] We recognize that, in contrasting a "land use compliance" determination under ORS 469.504 against "other" facility compliance determinations, ORS 469.503(3) does not refer to any "local ordinance" determined in the project order to apply to the facility. *Compare* ORS 469.330(3) (project order must establish "the statutes, administrative rules, council standards, *local ordinances*, application requirements and study requirements for the site certificate application" (emphasis added)); ORS 469.370(7) (council determination whether to issue final order must be based on standards adopted under ORS 469.501 "and any additional statutes, rules *or local ordinances* determined to be applicable to the facility by the project order, as amended" (emphasis added); ORS 469.401(2) (certificate must require compliance with "*local ordinances* and state law and the rules of the council" (emphasis added)). That lack of reference to local ordinances in ORS 469.503(3), however, does not diminish the import of that statute's characterization of ORS 469.504 as a "land use compliance" statute—as opposed to a category of "other," nonland use statutes, rules, and ordinances—for purposes of our analysis.

B.   *Ordinance 2012-04—"Land Use Regulation[ ]" or "Public Health and Safety" Ordinance*

We turn to whether the council properly characterized the two-mile setback contained in Ordinance 2012-04 as a "land use regulation[]" subject to analysis under ORS 469.504(1)(b)(A) or whether it should have treated the ordinance as a nonland use ordinance requiring compliance under the "abide by local ordinances" clause of ORS 469.401(2). We review the council's determination for any error of law. *See Rubalcaba v. Nagaki Farms, Inc.*, 333 Or 614, 619, 43 P3d 1106 (2002) (agency determination whether subject of applicable legal standard qualifies under that standard is conclusion of law, not finding of fact); *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976) (same; distinguishing when assessing question of law may involve predicate question of fact).

Ordinance 2012-04 was adopted as an amendment to the Umatilla County Code of Ordinances, as a new provision in the Development Code (UCDC, chapters 150-153 of the Umatilla County Code of Ordinances), UCDC section 152.616(HHH)(6)(a). That ordinance, as adopted on February 28, 2012, provided:

"§ 152.616 STANDARDS FOR REVIEW OF CONDITIONAL USES AND LAND USE DECISIONS.

"(HHH) Commercial Wind Power Generation Facility.

"(6) *Standards/Criteria of Approval* The following requirements and restrictions apply to the siting of a Wind Power Generation Facility:

"[(a)] Setbacks. The minimum setback shall be a distance of not less than the following:

"(1) From a turbine tower to a city urban growth boundary (UGB) shall be two miles. The measurement of the setback is from the centerline of a turbine tower to the edge of the UGB that was adopted by the city as of the date the application was deemed complete.

"(2) From a turbine tower to land zoned Unincorporated Community (UC) shall be 1 mile.

"(3)   From a turbine tower to a rural residence shall be 2 miles. For purposes of this section, a 'rural residence' is defined as a legal, conforming dwelling existing on the parcel at the time an application is deemed complete. The measurement of the setback is from the centerline of the turbine tower to the centerpoint of the residence."

*See* Ordinance No 2012-04, http://www.co.umatilla.or.us/planning/ordinances/Ordinance_2012-04.pdf (last accessed Apr 9, 2013) (italics in original). A revised version of the UCDC dated August 16, 2012—eight days before the council issued the final order at issue in this case—contains an expanded version of Ordinance 2012-04, still codified as UCDC section 152.616(HHH)(6)(a).[7] The expanded version includes the provisions set out above, with revised and additional text in subsection (6)(a)(3) that does not affect our analysis here. The revised version contains additional subsections to section (6)(a) that provide, in part:

"(4)   A Wind Power Generation Facility applicant may apply for and receive an adjustment for a reduced distance between a turbine tower and a rural residence under the following approval criteria. The adjustment application shall be submitted on a form provided by the County and signed by the rural residence landowner.

"(i)   The adjustment will not significantly detract from the livability of the subject rural residence. This standard is satisfied if applicable [O]DEQ noise standards are satisfied, there is no significant adverse impact to property access and traffic conditions, and other evidence demonstrates that the residence remains suitable for peaceful enjoyment or, such impacts to the livability of the rural residence resulting from the adjustment are mitigated to the extent practical; and

"(ii)   All other requirements of the Wind Power Generation Facility application remain satisfied.

"(5)   An adjustment application under this section shall be processed as a Land Use Decision concurrently

---

[7] We take judicial notice of the undisputed contents of the revised version of Ordinance 2012-04 dated August 16, 2012, as well as other aspects of the Code of Umatilla County. Only the original version of Ordinance 2012-04 and an interim, revised version dated March 13, 2012, are contained in the record of this proceeding.

with the Wind Power Generation Facility application. For applications subject to Energy Facility Siting Council * * * jurisdiction, an adjustment application shall be included as the applicable substantive criteria evaluated by [the council] when granting or denying an application for a Site Certificate.

"* * * * *

"(9)   The turbine/towers shall be of a size and design to help reduce noise or other detrimental effects. At a minimum, the Wind Power Generation Facility shall be designed and operated within the limits of noise standard(s) established by the State of Oregon. A credible noise study may be required to verify that noise impacts in all wind directions are in compliance with the State noise standard."

*See* http://www.co.umatilla.or.us/planning/pdf/Umatilla County_Development_Code.pdf, 310-11 (last accessed Apr 9, 2013) (emphases added).

In text and context, Ordinance 2012-04 bears the characteristics of a "land use regulation[]," consistently with the legislature's use of that term in ORS 469.504(1)(b)(A). The ordinance was adopted as an amendment to the county's Development Code, maintained by the county's Department of Land Use Planning. As written, the ordinance operates as a "siting" restriction. Revised subsection (6)(a)(4) permits a setback of less than two miles if approved through an adjustment application process; significantly, revised subsection (6)(a)(5) provides that such an adjustment application shall be processed as a "Land Use Decision" and that such applications "shall be included as the applicable substantive criteria" that the council evaluates in determining whether the facility complies with statewide planning goals under ORS 469.504(1). By contrast, subsection (6)(a)(4)(i) designates ODEQ noise regulations as providing applicable "noise standards" by which to measure an approved adjustment application, and subsection (6)(a)(9) establishes a "minimum" noise standard for wind energy facilities consistently with statewide noise standards—that is, those adopted by ODEQ. Ordinance 2012-04 does not itself establish any noise standard that may justify treating the ordinance as a "public health and

safety" measure, as opposed to a "land use regulation[]."[8] In sum, the foregoing evaluation supports the council's conclusion that the ordinance is a "land use regulation[]" for purposes of ORS 469.504(1)(b)(A).

In arguing to the contrary, petitioners rely, in part, on the "purpose" statement in Chapter 152 of the UCDC, which expressly refers to the promotion of public health and safety. That statement, codified as UCDC § 152.002, provides:

> "The intent of purpose of this chapter is to promote the public health, safety and general welfare and to carry out the County Comprehensive Plan, the provisions of ORS Chapters 92 and 215 and the Statewide Planning Goals adopted pursuant to ORS Chapter 197. This chapter is to establish use zones and regulations governing the development and use of land within portions of the county; to provide regulations governing non-conforming uses and structures; to establish and provide for the collection of fees; to provide to the administration of this chapter and for the officials whose duty it shall be to enforce the provisions thereof; to provide penalties for the violations of this chapter; to provide for conflicts with other ordinances or regulations; and provide classifications and uniform standards for the division of land and the installation of related improvements in portions of the unincorporated area of the county."

*See* http://www.co.umatilla.or.us/planning/pdf/Umatilla County_Development_Code.pdf, 12 (last accessed Apr 9, 2013). As can be seen, the statement identifies several purposes of chapter 152, not just the promotion of public health, safety, and general welfare—which, arguably, is an inextricable component of most land use regulations. Notably, the identified purposes include carrying out the county's comprehensive plan, state law pertaining to subdivisions and partitions (ORS chapter 92), state law pertaining to county planning, zoning, and housing codes (ORS chapter 215), and the statewide planning goals adopted pursuant to ORS chapter 197. Further, the statement primarily describes

---

[8] *Compare* Code of Umatilla County, Chapter 96 ("Noise Control Ordinance," Ordinance 99-07) (setting out, among other things, restrictions on noise levels), *see* http://www.co.umatilla.or.us/deptwebs/codes/96.pdf (last accessed Apr 9, 2013)).

the contents of Chapter 152 by using wording that can be characterized as relating to "land use" and not to "public health and safety." Indeed, in its original final order approving the initial site certificate, the council drew the "applicable substantive criteria from the affected local government's acknowledged comprehensive plan and land use regulations" under ORS 469.504(1)(b)(A) largely from various sections of UCDC Chapter 152. In short, the "purpose" statement cuts against petitioners' contention that Ordinance 2012-04 is a "public health and safety" measure subject to the "abide by local ordinances" clause of ORS 469.401(2), rather than a "land use regulation[]" as the legislature intended that term to apply in ORS 469.504(1)(b)(A).

Petitioners are correct that one *effect* of Ordinance 2012-04 may be a positive impact on public health and safety, given that an increased distance between wind turbines and rural residences potentially lessens any health or safety hazards that arguably may flow from turbine installation. The same could be said, however, for any number of land use restrictions—for example, a restriction that prohibits development in a flood plain may bear the characteristics of a "land use regulation[]," while at the same time having the effect of protecting public health and safety.[9] The fact that such a restriction may operate to benefit public health and safety, however, does not diminish its qualification under the legislature's express category of "land use regulations[]" for purposes of ORS chapter 469. That same logic applies to Ordinance 2012-04: As is clear from the text of the ordinance, the context of its adoption as part of the county's Development Code, and the UCDC purpose statement, the ordinance qualifies—under the legislative category of "land use regulations" identified in ORS 469.504(1)(b)(A)—as

---

[9] We also acknowledge that the legislature has determined, in other statutory contexts, that a "land use" regulation simultaneously may relate to "public health and safety." *See, e.g.*, ORS 197.723(5)(a) (statute establishing process for designating regionally significant industrial areas; one particular subsection does not apply to any "land use regulation that is necessary *** [t]o protect public health or safety"). Indeed, as noted earlier, ORS 469.310 requires that "the siting, construction and operation of energy facilities shall be accomplished in a manner consistent with protection of the public health and safety," which demonstrates that the legislature intended that public health and safety considerations be part of the siting decision for an energy facility.

a "land use regulation[]" pertaining to the siting of wind turbines.[10]

C. *Council's Application of ORS 469.504(1)(b(A) and "Abide by Local Ordinances" Clause of ORS 469.401(2) in its Final Order*

We turn to the council's application of the statutes at issue in its final order approving Amendment #2. First, the council applied ORS 469.504(1)(b)(A) and determined that it was precluded from including Ordinance 12-04 as part of the "applicable substantive criteria" to consider in making a land-use compliance determination, because the ordinance was not "in effect" on the Amendment #2 application date. As previously explained, we agree with the council that (1) Ordinance 2012-04 qualifies as a "land use regulation[]" within the meaning of ORS 469.504(1)(b)(A); and, (2) because the ordinance was not "in effect" on the Amendment #2 application date, it should not be considered as part of the substantive criteria assessment set out under that statute. The council did not err in applying ORS 469.504(1)(b)(A) in that manner.

Next, the council made a series of compliance determinations applying various public health and safety council-adopted standards, state statutes, and administrative rules to Amendment #2. For example, the council determined that, under ORS 469.503(1), the facility complied with council-adopted standards identified in ORS 469.501, including standards for the design, construction, and operation of the wind turbines, to avoid endangering public safety and to include adequate safety devices and

_____

[10] Petitioners also cite Oregon statutes and administrative rules that pertain to noise regulations, specifically, ORS 467.010 (declared policy that state has interest in controlling noise emission pollution and that protection program should be initiated) and OAR 340-035-0005 (ODEQ rule; state public policy to provide coordinated statewide noise control program, to facilitate cooperation among state and local governmental units in that regard, and to develop progressive and cooperative noise-control program). In petitioners' view, in linking noise prevention with public health, those provisions support construing Ordinance 2012-04 as a "public health and safety" ordinance subject to the "abide by local ordinances" clause of ORS 469.401(2). The existence of those express public policies, however, do not support characterizing Ordinance 2012-04—which, by its terms, was written and adopted as a land-use regulation and therefore subject to consideration under ORS 469.504(1)(b)(A)—as a public health and safety measure in the manner that petitioners contend.

testing procedures. The council noted in that regard that several related site certificate conditions, expressly included in the original final order approving the initial site certificate, were necessary to "ensure public safety." *See* ORS 469.503(1) (before issuing site certificate, council must determine that preponderance of evidence supports conclusion that facility complies with council-adopted standards under ORS 469.501); ORS 469.501(1) (council shall adopt standards for energy facility siting, construction, operation, and retirement, including standards addressing structural, financial, environmental, and public health and safety concerns; council has adopted those standards as administrative rules); ORS 469.401(2) (site certificate shall contain conditions for, among other things, "protection of the public health and safety"). The council further determined under ORS 469.503(3) that the facility, with Amendment #2, would comply with "all other Oregon statutes and administrative rules identified in the project order," including ODEQ noise regulations, subject to site certificate conditions already identified in the original final order. Then, as to the requirement in ORS 469.310 that the council ensure that the siting, construction, and operation of energy facilities "be accomplished in a manner consistent with protection of the public health and safety," the council identified previously imposed "public health and safety" conditions addressing fire protection, magnetic fields, and coordination with the Public Utilities Commission regarding electrical transmission line design. As to all those described components, the council determined that nothing in Amendment #2 would alter the earlier compliance findings from its original final order approving the initial site certificate, so long as previously imposed conditions continued to apply. We set out the foregoing determinations—which petitioners do not dispute—as an illustration of the council's assessment and application of various "public health and safety" standards, rules, and site certificate conditions to Amendment #2.

We turn to the council's application of the "abide by local ordinances" clause of ORS 469.401(2). The council expressly stated that "the site certificate holder is subject to all applicable conditions and requirements contained in the rules of the Council *and in local ordinances and state law*

*in effect on the date the amended site certificate is executed*."
(Emphasis added.) In that part of its final order, the council
did not mention Ordinance 2012-04; however, the council
previously had considered and rejected application of the
ordinance in determining whether the facility complied with
statewide planning goals under ORS 469.504(1)(b)(A) and
had incorporated an ODOE staff recommendation that it not
apply the ordinance under the "abide by local ordinances"
clause of ORS 469.401(2). As do the parties, we infer that
the council concluded that the proper characterization
of Ordinance 2012-04 as a "land-use regulation[]" subject
to evaluation under ORS 469.504(1)(b)(A) precluded its
application under the "abide by local ordinances" clause of
ORS 469.401(2).

In light of our statutory analysis and review of the
council's legal evaluation of Ordinance 2012-04, we conclude
that the council did not err in its application of the "abide
by local ordinances" clause of ORS 469.401(2). As discussed,
the council correctly characterized Ordinance 2012-04 as
a "land use regulation[]" under ORS 469.504(1)(b)(A) and
correctly concluded that the effective date of the ordinance
precluded its consideration under that statute. Because the
council accurately characterized Ordinance 2012-04 as a
"land use regulation[]," it also correctly concluded that the
ordinance did not fall within the scope of the "abide by local
ordinances" clause of ORS 469.401(2).

IV.   SECOND ASSIGNMENT OF ERROR:
ORS 469.401(2)—"LATER-ADOPTED" LAWS OR RULES

We turn to petitioners' second assignment of error,
under the "later-adopted laws" clause of ORS 469.401(2),
which provides:

> "The site certificate or amended site certificate shall
> require both parties to abide by local ordinances and state
> law and the rules of the council in effect on the date the
> site certificate or amended site certificate is executed,
> except that upon a clear showing of a significant threat to
> the public health, safety or the environment that requires
> application of later-adopted laws or rules, the council may
> require compliance with such later-adopted laws or rules."

(Emphasis added.) Relying on the ODOE staff report, the council in its final order declined to require compliance with Ordinance 2012-04 as a "later-adopted law[]"under ORS 469.401(2). Petitioners assert that the ordinance qualifies as a "later-adopted law[]," that they presented substantial evidence to satisfy the "significant threat" requirement, and that the council abused its discretion when it failed to require compliance with the ordinance in Amendment #2.

Before turning to the merits, we address three preliminary considerations. First, the parties do not appear to dispute that the words "later-adopted laws or rules" in ORS 469.401(2) mean laws or rules adopted *after the execution date* of either the site certificate or an amended site certificate, as applicable.[11] Here, the county adopted Ordinance 2012-04 *before* the council issued its final order approving Amendment #2 and before the execution date for Amendment #2—indeed, that amended site certificate has not yet been executed, pending the outcome of this proceeding. In the context of this assignment of error, then, petitioners appear to treat the execution date for either the initial site certificate or for Amendment #1—which both predated adoption of Ordinance 2012-04—as the operative trigger date that justifies treatment of the ordinance as a "later-adopted law[]." That is, unlike their first assignment of error—which exclusively focuses on the statutorily required contents of Amendment #2—this assignment alternatively contends that Amendment #2 should address the changed circumstance of the county's adoption of Ordinance 2012-04 after the execution date for either the original site certificate or Amendment #1.

Second, we note that OAR 345-027-0090 provides a process for requesting that the council require facility compliance with later-adopted laws or rules under the "significant threat" requirement set out in ORS 469.401(2). Such a process was not initiated here; instead, petitioners raised (and continue to raise) their "later-adopted" contentions in the context of challenging Helix's Amendment #2 application. Although the council and Helix

---

[11] By contrast, the preceding "abide by local ordinances" clause of ORS 469.401(2) unequivocally applies to local ordinances, state law, and council rules in effect *on* the execution date.

disagree with petitioners on the merits, they do not argue that petitioners should have raised this challenge through the process established in OAR 345-027-0090.

Third, in disagreeing with petitioners on the merits, the council and Helix do not appear to dispute petitioners' assumption that a local *ordinance* may qualify under the "later-adopted *laws or rules*" clause of ORS 469.401(2) (emphasis added). As a matter of statutory interpretation, we agree with that construction. At first blush, the more precise wording of the preceding "abide by local ordinances" clause—which requires inclusion in the site certificate of compliance conditions as to "*local ordinances* and state law and the rules of the council" in effect on the execution date (emphasis added)—coupled with the lack of reference to "local ordinances" in the "later-adopted laws" clause, could be read to suggest that "later-adopted" laws include state laws but exclude local ordinances. However, other aspects of the statutory scheme suggest that "later-adopted laws" include local ordinances. For example, subsection (3) of ORS 469.401 provides, in part:

> "(3)  * * *  After the site certificate or amended site certificate is issued, the only issue to be decided in an administrative or judicial review of a state agency or local government permit *for which compliance with governing law was considered and determined in the site certificate or amended site certificate proceeding* shall be whether the permit is consistent with the terms of the site certificate or amended site certificate. * * *"

That subsection of ORS 469.401 uses the words "governing law" to refer to the collective body of ordinances, state law, and rules that are subject to site certificate compliance requirement terms under subsection (2). That reference in turn suggests that the similarly broad "later-adopted laws" clause of subsection (2) incorporates local ordinances, as well. By contrast, ORS chapter 469 consistently refers to categories of applicable *state* law as "statutes" or "state laws," instead of using the broader term, "laws." *See* ORS 469.503(3) (in determining facility compliance with "*Oregon statutes* and administrative rules identified in the project order," if council identifies related conflicting certificate conditions, council may resolve conflict but may not waive

"any applicable *state statute*" (emphases added)); ORS 469.504(3) (similar waiver provision; refers to "applicable *statutes* and state administrative rules" (emphasis added)); ORS 469.401(2) (refers to compliance with future-adopted "applicable *state* and federal laws" to extent required under state agency statutes and rules (emphasis added)). In light of that statutory context, we agree with all parties that "later-adopted laws" referred to in ORS 469.401(2) may include local ordinances.

We turn to petitioners' contention on the merits. As noted, under ORS 469.401(2), the council "may" require compliance with a "later-adopted law[]" upon a clear showing of a significant threat to the public health, safety, or the environment that requires application of such a law. Because the council's determination under that clause is discretionary, we review the council's decision to not require compliance with Ordinance 2012-04 as a "later-adopted law[]" for abuse of discretion. *See* ORS 183.482(8)(b)(A) (court shall remand if it finds agency's exercise of discretion to be outside range of discretion delegated to agency by law).

In its final order approving Amendment #2, the council incorporated by reference factual findings from both the original final order approving the initial site certificate and the final order approving Amendment #1 that the facility would comply with ODEQ noise regulations, subject to identified site certificate conditions. The council further concluded that, subject to those same site certificate conditions, the facility would comply with applicable ODEQ regulations under Amendment #2. The council did not specifically analyze petitioners' contentions under the "later-adopted laws" clause of ORS 469.401(2) in its final order; instead, the order incorporated the ODOE staff report analysis by reference.

The ODOE staff report recommended that the council decline to find that a setback of less than two miles posed a significant threat to public health and safety. First, the report explained that the council previously had determined—in an unrelated proceeding—that a 1/4 mile setback was sufficient and that the council since had applied that smaller setback to other wind energy facilities.

Second, the report explained that ODEQ noise regulations established a "public health setback" that may exceed 1/4 mile depending on certain circumstances and that the council applied those regulations to all energy facilities. The report therefore recommended that the council follow its own previously established 1/4-mile setback or a setback that otherwise complied with ODEQ regulations, whichever was greater. The report further noted that the council expressly had declined to adopt a two-mile setback when the same question had been raised in proceedings challenging Amendment #1 the previous year; as noted, both the original final order and the final order approving Amendment #1 had concluded that (with identified conditions in place) the facility would comply with ODEQ noise regulations. By incorporating the ODOE staff report by reference, the council implicitly declined to require compliance with Ordinance 2012-04 in Amendment #2 as a "later-adopted law[]."

In challenging that decision, petitioners argue that the council discounted their supporting documentation demonstrating the adverse public health effects of wind turbine noise and that the council failed to evaluate whether petitioners had made a sufficient "significant threat" showing, so as to justify requiring compliance with Ordinance 2012-04 as a "later-adopted law[] under ORS 469.401(2). Petitioners are correct that, in its assessment of the "significant threat" question, the council expressly focused on its own precedent and, in particular, the applicable ODEQ regulations, rather than on petitioners' arguments and documentation. However, after viewing the relevant final order components as a whole, we understand the council to have declined to require compliance with Ordinance 2012-04 because the applicable ODEQ regulations and council precedent countered petitioners' proffered "significant threat" showing.

We conclude that the council did not abuse its discretion in declining to require compliance with Ordinance 2012-04 in Amendment #2 as a "later-adopted law[]" under ORS 469.401(2). As part of issuing both its original final order and its final order approving Amendment #1, the council previously had determined

that the facility was subject to the ODEQ noise regulations and that the facility would comply with those regulations. In succinctly addressing petitioners' contentions in this Amendment #2 proceeding, the council continued to apply its earlier analysis from the Amendment #1 proceeding and determined that its own precedent, facility compliance with ODEQ regulations, and previously imposed site certificate conditions effectively negated petitioners' "significant threat" contentions. The council's reliance on the ODEQ regulations as part of assessing petitioners' "significant threat" contention fell within its statutory authority under ORS 469.401(2).[12] It follows that its ultimate determination that the "later-adopted laws" clause of that statute did not require compliance with Ordinance 2012-04 also fell within its authority.

## V.   THIRD ASSIGNMENT OF ERROR: OAR 345-027-0070(7)—CONTESTED CASE PROCEEDING

Petitioners' final assignment of error is that the council erred in denying their requests for a contested case proceeding. They rely on OAR 345-027-0070(7), which provides, in part:

> "To determine that an issue justifies a contested case proceeding under section (8),[13] the Council must find that the request raises a significant issue of fact or law that may affect the Council's determination that the facility, with the change proposed by the amendment, meets an applicable standard. If the Council finds that the request would not affect the Council's determination if the alleged facts were found to be true but that those facts could affect a site certificate condition, the Council may deny the request and may adopt appropriate conditions. ***"

---

[12] And, even if the council had determined that petitioners had established a "significant threat," it nonetheless had discretion under ORS 469.401(2) whether to treat Ordinance 2012-04 as a "later-adopted law[.]"

[13] OAR 345-027-0070(8) provides, in part, that the council "shall determine whether any issue identified in a request for a contested case proceeding justifies a contested case proceeding[.]" *See also* OAR 345-027-0070(6) (any person may ask council to hold contested case proceeding on proposed order; written request must include description of contested issues and statement of facts believed to be at issue).

(Emphasis added.) Petitioners focus on the "significant issue of fact or law" component, arguing that their legal and factual submissions to the council as to the proper application of ORS 469.401(2) and Ordinance 2012-04, and the noise impact of wind turbines on public health and safety, satisfied that component. Petitioners additionally contend that a contested case proceeding would have provided them the opportunity to further develop their legal analysis and more persuasively establish that a setback of less than two miles would create a "significant threat" to public health and safety under the second clause of the second sentence of ORS 469.401(2). As to the "applicable standard" component of OAR 345-027-0070(7), petitioners characterize the alternative 1/4-mile setback and ODEQ regulations as insufficient alternative "standards" to the two-mile setback required in Ordinance 2012-04; they also characterize their proffered construction of ORS 469.401(2) as a "standard" that applied to the council's determination under OAR 345-027-0070(7).

OAR 345-027-0070(7) requires that petitioners raise "a significant issue of fact or law" and also that the issue must be one that may affect the council's determination that the facility, with the proposed amendment, would "meet[] an applicable *standard*." (Emphasis added.) In the context of OAR chapter 345, the phrase "meets an applicable standard" in OAR 345-027-0070(7) has a particular meaning. ORS 469.501 requires the council to adopt "standards for the siting, construction, operation and retirement of [energy] facilities," and the council has done so.[14] As part of the site certificate application process, the council must determine that the facility complies with those council-adopted standards, ORS 469.503(1), just as it also must determine whether the facility complies with statewide planning goals, ORS 469.503(4), and whether it complies

---

[14] *See* OAR 345-022-0010 - 345-022-0120 (setting out standards relating to applicant's organizational expertise; facility structure; soil protection; land use (including compliance with statewide planning goals); protected areas; retirement and financial assurance; fish and wildlife habitat; threatened and endangered species; scenic resources; historic, cultural, and archaeological resources; recreation; public services; and waste minimization); OAR 345-024-0010 - 345-024-0720 (setting out specific standards for siting facilities, including wind facilities, transmission lines, and facilities that emit carbon dioxide).

with other state statutes and rules identified in the project order, ORS 469.503(3). Thus, the question under OAR 345-027-0070(7) is whether the council erred in determining that petitioners raised no significant issue of fact or law that may have affected the council's determination under ORS 469.503(1) that the facility, with Amendment #2, would meet an applicable council-adopted standard arising under ORS 469.501.

Here, the council's determination under OAR 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(7) was summary in nature but incorporated by reference extensive discussion from the ODOE staff report. That report analyzed petitioners' contentions under the second sentence of ORS 469.401(2) and recommended that the council reach the same determinations that we now have affirmed: (1) Ordinance 2012-04 qualifies as a "land use regulation[]" under ORS 469.504(1)(b)(A) and therefore should not be considered under the "abide by local ordinances" clause of ORS 469.401(2); and (2) in light of applicable council precedent, the ODEQ noise regulations, and the related procedural background as to this site certificate, the council should decline to require compliance with Ordinance 2012-04 as a "later-adopted law[]"under ORS 469.401(2). Significantly, the report also reiterated that the final order approving Amendment #1 had determined that the two-mile setback did not apply to any of the council's "compliance" determinations under ORS 469.503— including compliance with council-adopted standards under ORS 469.503(1)—and that Amendment #2 raised no new facts or circumstances that justified altering the council's earlier ORS 469.503 compliance determinations. The report expressly recommended that the council find that petitioners had not satisfied the threshold requirements under OAR 345-027-0070(7). By incorporating the ODOE staff report by reference, the council adopted the staff analysis and made the recommended determination.

We conclude that the council did not err in rejecting petitioners' requests for a contested case proceeding. The council determined that petitioners' legal and factual claims—even to the extent that they may have raised "significant issue[s] of fact or law" in the abstract—did not

raise any significant issue or fact or law that may have affected the council's determination under ORS 469.503(1) that the facility "meets an applicable standard" under OAR 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(7); instead, petitioners focused on the council's application of the second sentence of ORS 469.401(2), regarding amended site certificate contents. The council's determination was permissible, given the narrow wording of OAR 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(7). *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (where council's plausible interpretation of own rule cannot be shown to be inconsistent with wording of rule, context, or any other source of law, no basis exists for this court to conclude that council interpreted rule "erroneously").

## VI.  CONCLUSION

To summarize, we conclude that (1) the council correctly characterized Ordinance 2012-04 as a "land use regulation[]" subject to consideration under ORS 469.504(1)(b)(A) and properly declined to consider the ordinance under that statute because it was not "in effect" on the Amendment #2 application date; (2) because the ordinance qualified as a "land use regulation[]" under ORS 469.504(1)(b)(A), the council correctly declined to require compliance with the ordinance under the "abide by local ordinances" clause of ORS 469.401(2); (3) the council did not abuse its discretion in declining to require compliance with the ordinance as a "later-adopted law[]"; and (4) the council did not err in denying petitioners' requests for a contested case proceeding. We therefore affirm the council's final order approving Amendment #2.

The Final Order Denying a Contested Case Proceeding and Approving Amendment #2 of the Energy Facility Siting Council is affirmed.