Argued and submitted June 11, 2019; resubmitted en banc December 16, 2020; order modified to set aside $5,000 civil penalty, otherwise affirmed May 5, 2021

# ALLIED STRUCTURAL,
*Petitioner,*

*v.*

# CONSTRUCTION CONTRACTORS BOARD,
*Respondent.*

Construction Contractors Board
108760; A164317

492 P3d 642

Allied Structural petitions for review of an order of the Construction Contractors Board (CCB) revoking Allied's construction contractor license and assessing a civil penalty of $5,000. The CCB issued the order after reviewing Allied's owner's (Koontz's) conduct while on post-prison supervision for a sexual abuse conviction and concluding that Allied was unfit for licensure. On review, Allied challenges, among other things, the CCB's consideration of Koontz's convictions in determining whether to revoke Allied's license and impose a penalty. *Held*: The CCB did not err in revoking Allied's license but erred in imposing the penalty. As for the license, rather than revoking Allied's license based solely on Koontz's criminal history, it permissibly considered the intervening circumstances of the conviction and their relationship to Koontz's profession. As for the penalty, the CCB did not have the statutory authority to impose a civil penalty based on a determination that a license applicant or licensee is unfit for licensure on criminal-conviction grounds; Allied did not violate a provision that allowed the CCB to impose a civil penalty under ORS 701.992.

Order modified to set aside $5,000 civil penalty; otherwise affirmed.

En Banc

Christopher W. Peterman argued the cause for petitioner. Also on the opening brief were Keith D. Ropp and Christopher W. Peterman, Attorney at Law, P.C. Also on the reply brief was Christopher W. Peterman, Attorney at Law, P.C.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Chief Judge, and Armstrong, Ortega, DeVore, Lagesen, Tookey, DeHoog, Shorr, James, Aoyagi, Powers, Mooney, and Kamins, Judges.

LAGESEN, J.

Order modified to set aside $5,000 civil penalty; otherwise affirmed.

Lagesen, J., filed the opinion of the court in which Armstrong, Ortega, DeHoog, Shorr, James, Powers, Mooney, and Kamins, JJ., joined.

Egan, C. J., concurred in part and dissented in part and filed an opinion in which DeVore, Tookey, and Aoyagi, JJ., joined.

**LAGESEN, J.**

Does the Construction Contractors Board (CCB) have the statutory authority to impose a monetary penalty when it determines that a license applicant or licensee is unfit for licensure based on one of the criminal convictions listed in ORS 701.098(1)(i)? We took this matter into full court to consider that question because it is an important one regarding the scope of the power the legislature has conferred on the CCB, and because the answer to it has potentially significant financial consequences for Oregonians seeking to enter or remain in the construction industry. Ultimately, we conclude that the legislature has not given the CCB the authority to impose a civil penalty based on a determination of unfitness for licensure on criminal-conviction grounds, something that requires a partial reversal in this case.

Some housekeeping is in order. Although the penalty issue is the one that led us to take this matter into full court, it is not the only issue presented in this proceeding in which petitioner, Allied Structural (Allied), seeks judicial review under ORS 183.482 of the CCB's final order revoking its construction contractor license and imposing a $5,000 civil penalty. In addition to challenging the penalty, Allied contends that the CCB made several procedural errors that require reversal, and also that the CCB made substantive errors of law in deciding to revoke its license. We therefore start by addressing Allied's asserted procedural errors and challenges to the revocation decision, before addressing the penalty question that has divided us.

Giving credit where credit is due, and seeing no need to reinvent the wheel, our ensuing discussion—with the exception of the recitation of certain facts and the analysis related to the penalty question—is drawn almost entirely, to the word, from the opinion prepared by Chief Judge Egan on behalf of Department Four of this court.

As noted, Allied, an Oregon business trust, seeks judicial review of an order of the CCB revoking its construction contractor license after determining that Patrick Koontz, Allied's owner, majority trustee, and "responsible

managing individual" (RMI),[1] was not fit for licensure. While holding a previous license, Koontz had been convicted of sexual abuse and had not notified the CCB. The CCB revoked Allied's license and assessed a civil penalty of $5,000 pursuant to ORS 701.098(1)(i)(E),[2] after determining that Koontz's conduct while on post-prison supervision for the sexual abuse conviction rendered him and, therefore, Allied, unfit for licensure. ORS 701.102(2)(d).[3] Allied also challenges the board's assessment of a penalty. We conclude that the CCB did not err in determining that Koontz and, therefore, Allied, were unfit, and therefore revoking Allied's license. The penalty, as we have said, is a different story.

## PROCEDURAL ISSUES

We address first Allied's challenges to two procedural rulings by the CCB. The CCB referred Allied's request for hearing from the notice of license revocation to the Office of Administrative Hearings (OAH). One month before the hearing, Allied's attorney withdrew. Koontz requested to be recognized as Allied's authorized representative and requested a postponement of the hearing. An administrative law judge (ALJ) for the OAH notified Allied that it was required to appear through counsel or that it would be held

---

[1] ORS 701.091(1) provides that a business licensed by the CCB "must at all times have at least one responsible managing individual."

[2] ORS 701.098(1)(i)(E) provides:

"The Construction Contractors Board may revoke, suspend or refuse to issue or reissue a license and the board may assess a civil penalty as provided in ORS 701.992 if the board determines after notice and opportunity for hearing:

"* * * * *

"(i) * * * that the licensee or applicant, or an owner or officer of the licensee or applicant has been convicted of one of the following crimes in this state or an equivalent crime in another state:

"* * * * *

"(E) Sexual abuse[.]"

[3] ORS 701.102(2)(d) provides that

"[t]he Construction Contractors Board may revoke, suspend or refuse to issue a license required under this chapter to a business if:

"* * * * *

"(d) The board determines that an owner, officer or responsible managing individual of the business is not fit for licensure[.]"

in default and that, if it appeared at the hearing through counsel, the ALJ would consider a postponement.

At the hearing, an attorney appeared by telephone on behalf of Allied but only for the limited purpose of requesting a postponement or an authorization for Koontz to appear on behalf of Allied. The ALJ rejected both requests. The attorney then withdrew. The ALJ declared Allied in default and determined, after considering the CCB's evidence, that the CCB had established the bases for revocation of Allied's license and the penalty. Allied filed exceptions with the CCB's Appeal Committee, which upheld the ALJ's procedural rulings and determined that the CCB had established the bases for the revocation and penalty.

In its first assignment of error, Allied asserts that the CCB erred in declining to authorize Koontz, as trustee and RMI, to represent the business trust. The issue presented is one of statutory construction with respect to three interrelated statutes that we review for errors of law. *Blue Mountain Alliance v. Energy Facility Siting*, 353 Or 465, 475, 300 P3d 1203 (2013); *see also* ORS 183.482(8)(a) (a court determines whether an agency "has erroneously interpreted a provision of law").

Allied is organized as a business trust under ORS 128.560, which provides:

> "A 'business trust' is any association, including a real estate investment trust, engaged in or operating a business under a written trust agreement or declaration of trust, the beneficial interest under which is divided into transferable certificates of participation or shares, other than a trust engaged solely in exercising the voting rights pertaining to corporate shares or other securities in accordance with the terms of a written instrument."

Under ORS 128.580,

> "[e]xcept as otherwise provided in its trust agreement or declaration of trust, or any amendments thereto, any business trust shall also be subject to the other provisions of ORS chapter 60 and other rights and duties existing under the common law and statutes of this state applicable to domestic and foreign corporations."

ORS 9.320 states the general rule that a party that is not a natural person, which includes a business trust, must appear through counsel in a legal proceeding:

"Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a party that is not a natural person appears by attorney in all cases, unless otherwise specifically provided by law."

*See Oregon Peaceworks Green, PAC v. Sec. of State*, 311 Or 267, 270-72, 810 P2d 836 (1991) (only persons licensed to practice law may represent corporations and other entities in court); *Marguerite E. Wright Trust v. Dept. of Rev.*, 297 Or 533, 536-37, 685 P2d 418 (1984) (holding that, pursuant to ORS 9.320, a nonattorney may not represent a business trust). Consistent with that statute, the CCB has adopted the Attorney General's model rule for representation at administrative hearings, which provides:

"Corporations, partnerships, limited liability companies, unincorporated associations, trusts and government bodies must be represented by an attorney except as provided in OAR 137-003-0555 or as otherwise authorized by law."

OAR 137-003-0550(2).[4]

ORS 701.160(1) creates a statutory exception for certain entities appearing before the CCB:

"Notwithstanding ORS 9.320:

"A party may appear or be represented by an individual who is not a member of the Oregon State Bar in a proceeding before the Construction Contractors Board if:

"(a)   The party is a corporation and the individual is an officer of the corporation;

"(b)   The party is a partnership, or a limited liability partnership or foreign limited liability partnership as those terms are defined in ORS 67.005, and the individual is a partner in the partnership, limited liability partnership or foreign limited liability partnership;

---

[4] The CCB adopted the Attorney General's Model Rules of Procedure. OAR 812-001-0120.

"(c)   The party is a limited partnership as defined in ORS 70.005 and the individual is a general partner in the partnership;

"(d)   The party is a manager-managed limited liability company as defined in ORS 63.001 and the individual is a manager of the company; or

"(e)   The party is a member-managed limited liability company as defined in ORS 63.001 and the individual is a member of the company."

A business trust is not among the entities listed in ORS 701.160(1) that may be represented before the CCB by a person who is not an attorney.

ORS 701.160(2) provides an additional exception for forms of business entities that are not described in ORS 701.160(1) but that the CCB allows through administrative rule to be represented by a person who is not an attorney:

"In addition to parties described in subsection (1) of this section, the board, by rule, may recognize particular business forms as parties that may appear or be represented by an individual who is not a member of the Oregon State Bar in a proceeding before the board. A board rule adopted under this subsection must identify the business form of the party and specify the required relationship between the party and the individual. The board may allow appearance or representation of a party only by an individual who is a director, officer, partner, trustee, manager or authorized regular employee of the party."

The CCB has not adopted an administrative rule authorizing business trusts to appear through a person who is not an attorney. Thus, there is no statutory or administrative rule exception for business trusts to the general rule that a business entity must be represented by an attorney before the CCB.

ORS 128.580 provides that business trusts "shall also be subject to the other provisions of ORS chapter 60 and other rights and duties existing under the common law and statutes of this state applicable to domestic and foreign corporations." Citing that statute, Allied contends that, because *corporations* may be represented before the CCB by officers, ORS 701.160(1)(a), and business trusts are to be treated as

corporations, Koontz, as Allied's majority trustee, must also be allowed to represent Allied.

The Supreme Court rejected nearly the identical argument in *Marguerite E. Wright Trust*, 297 Or at 536-37, holding that, although ORS 128.580 provides that a business trust is to be treated as a corporation and may bring suit in its own name, no statutory provision authorizes an exception for business trusts to the requirement of ORS 9.320 that an entity be represented by an attorney. The court held, in effect, that ORS 128.580 does not address the question of representation. It is up to the CCB to create an exception to ORS 9.320 for business trusts if it wishes to do so, and it has not done so. We therefore conclude that the CCB did not err in determining that Allied could not be represented by or appear through Koontz.[5]

In its second assignment, Allied asserts that the CCB erred in rejecting its challenge to the ALJ's refusal to allow a postponement of the hearing or a new hearing to allow Allied to put on evidence of "good cause" for its default. Whether to allow a postponement or a new hearing was within the CCB's discretion. *See* OAR 137-003-0525.[6] We have reviewed the record and it shows that the ALJ and the parties engaged in an extensive colloquy concerning Allied's reasons for not having an attorney, and that the ALJ considered them in determining that Allied lacked good cause for a postponement. Additionally, the ALJ offered several dates for a possible continuance of the hearing but counsel who appeared for Allied for the sole purpose of requesting a setover was unwilling to unconditionally commit to a specific date. We conclude from our review of the record that the ALJ considered Allied's "good cause" contentions and that the CCB's rejection of Allied's request for a postponement or a rescheduling of the hearing was within the range of the

---

[5] We reject Allied's constitutional contentions without discussion.

[6] OAR 137-003-0525(2) provides:

"Unless otherwise provided by law, the Office of Administrative Hearings or assigned administrative law judge may postpone or continue a hearing:

"(a) For good cause; or

"(b) By agreement of the parties and the agency, if the agency is participating in the hearing."

CCB's discretion. *See* ORS 183.482(8)(b) (discretionary rulings reviewed for whether agency acted outside the range of discretion).

## MERITS ISSUES

First, some background: In April 2014, Koontz applied for a contractor's license for Allied. The application required disclosure of convictions that had occurred within five years of the application, ORS 701.046(1)(k)(E). Koontz's prior convictions were in 2006, and he therefore did not disclose them. The CCB approved Allied's license application.

In 2014, Koontz's parole officer notified the CCB that Koontz was attempting to use Allied's license to be in locations close to children, in violation of supervision conditions. Based on its own investigation, in March 2015, the CCB initiated this proceeding to revoke Allied's license. The CCB alleged that Koontz's conviction meant that Allied was unfit for licensure. The CCB further alleged that, in addition to being unfit for licensure, Allied had failed to use required contract language, failed to deliver certain required notices, and failed to retain proof of delivery of required notices, in violation of specified statutes and CCB rules.

In a proposed order issued by default, the ALJ found both that Allied was unfit for licensure because of its RMI's criminal history and conduct related to that history, and that Allied in one instance violated ORS 87.093 and OAR 812-012-0130(2) by not retaining proof that it delivered the notice required by ORS 87.093. The ALJ found that the CCB had not proved the other alleged violations. The ALJ then imposed a civil penalty of $5,000 based on the violations of ORS 87.093 and OAR 812-012-0130(2). The ALJ concluded that the law did not authorize the imposition of a civil penalty based on the determination that Allied was unfit for licensure.

Allied appealed to the CCB's Appeal Committee. On appeal, the CCB made these findings: In 2001, Koontz, doing business as Allied Builders, became licensed as a contractor. In 2006, Koontz was convicted of first-degree sexual abuse, attempted sexual abuse, and public indecency, with victims who were under the age of 14. Koontz did not notify

the CCB of his convictions, as would have been required by OAR 812-003-0040, and the CCB did not at that time learn of Koontz's convictions. In November 2006, Koontz's license was suspended for an unrelated matter, and, in 2007, his license expired.

Koontz served 75 months in prison and one year in a county jail for his offenses. He was released to post-prison supervision in 2013, with conditions that he register and report as a sex offender, enter and complete a sex offender treatment program, and not have contact with minors under the age of 18 or come within 500 feet of a school without written approval of his supervising officer. Because the parole officer determined that Koontz was pushing the limits of the exclusion zone, it was subsequently expanded to within 1,000 feet of a school, day care center, or places where children congregate. Koontz was required to wear a GPS device to track his movements to ensure that he did not violate the supervision conditions. Records of Koontz's parole officer describe Koontz's frequent attempts to evade those conditions and his frequent sanctions for violating them.

The CCB found that Koontz had not accepted responsibility for his crimes, had not completed sex offender treatment, and had repeatedly sought construction work within exclusion zones around schools and other areas where children were present.

The CCB found that Koontz himself was not fit for licensure under ORS 701.098(1)(i)(E) because Koontz had been convicted of sexual abuse, and he was not rehabilitated. The CCB found, further, that Koontz did not have the ability to refrain from sexually predatory behavior, and that the sexually predatory behavior substantially related to Allied's construction contracting activity. In reaching its conclusion that Koontz was unfit, the CCB cited, as an example, Koontz's use of the CCB license "as a means for Koontz to seek and secure work near schools and day cares and locations where children congregate[.]"[7] Citing ORS 701.102(2)(d),

---

[7] The CCB cited, among other examples, Koontz's failure to complete an approved sex offender treatment program; "constant submission of requests to work in the proximity of schools, daycares and other facilities where teens tend to congregate, resulting in the imposition of exclusionary zones"; refusal to let his supervisory officer review his job sites; constant requests "to work out of

the CCB determined that Koontz, as Allied's RMI, was not fit for licensure because of conduct subsequent to his convictions. In light of the failure of Allied's RMI to meet the standards for fitness, the CCB concluded that Allied also was not fit to be licensed as a contractor. The CCB's order was stayed pending judicial review.

As for the penalty, the CCB withdrew the allegations that Allied violated the statutes and rules governing the provision and retention of notices and, in so doing, withdrew the allegation on which the ALJ had determined a penalty was authorized and warranted. The CCB nonetheless retained the civil penalty, stating that it "does not, however, agree with the ALJ that the only basis for imposition of a penalty in this matter was that relating to the provision of notices." Without discussing the text of ORS 701.992 or its own rule governing the imposition of civil penalties, the CCB summarily determined that, having found that "the Respondent has committed the crime of sexual abuse and that the crime is substantially related to the fitness and ability of the Respondent to engage in work as a construction contractor," it was authorized by "ORS 701.992(1) and (3)" to impose a civil penalty up to $5,000.

Allied excepted to that conclusion (among others), arguing that a determination that Allied was "unfit" for licensure did not constitute a finding of a "violation" of CCB statutes or rules so as to allow for the imposition of a civil penalty under the terms of ORS 701.992. The CCB adhered to its determinations. Addressing the exception to the penalty, the CCB again elected not to examine the text and context of ORS 701.992. The CCB also did not examine its own rule governing the imposition of civil penalties. Instead, the CCB reiterated its conclusion that Allied was unfit and then repeated its conclusory statement that ORS 701.992 authorized it to impose a civil penalty based on a finding of unfitness.

*Challenges to revocation.* In its third assignment of error on judicial review, Allied contends that the CCB erred in considering Koontz's 2006 convictions, which occurred

county where his supervisory officers cannot visually monitor him"; and repeated requests to be able to visit the home of a construction contracting colleague where children were present even when told "no" on multiple occasions.

more than five years before the licensing application, in determining whether to revoke Allied's license or impose a penalty. That issue presents a question of statutory construction that we review for errors of law. *Blue Mountain Alliance*, 353 Or at 475.

ORS 701.098 provides, as relevant:

"(1)   The Construction Contractors Board may revoke, suspend or refuse to issue or reissue a license and the board may assess a civil penalty as provided in ORS 701.992 if the board determines after notice and opportunity for hearing:

"* * * * *

"(i)   Consistent with the provisions of ORS 670.280, that the licensee or applicant, or an owner or officer of the licensee or applicant has been convicted of one of the following crimes in this state or an equivalent crime in another state:

"* * * * *

"(E)   Sexual abuse[.]"

Under ORS 701.098(1)(i)(E), the CCB has discretion to revoke a license if, after notice and an opportunity for a hearing, it determines that a licensee has been convicted of sexual abuse when, consistent with ORS 670.280, the conviction renders the licensee unfit for licensure. Allied notes that, under ORS 701.046(1)(k)(E),[8] an applicant for a contractor's license need not disclose convictions older than five years. In Allied's view, ORS 701.046(1)(k)(E) creates a five-year limitation on the CCB's consideration of prior convictions. We reject the contention. ORS 701.098(1)(i)(E) does not impose a time limit on consideration of a sexual abuse conviction. The fact that convictions older than five years need not be disclosed on an application does not mean that older convictions are irrelevant or not permitted to be considered by the CCB in determining the fitness of a licensee under ORS 701.102(2)(d) or whether to revoke a license.

---

[8] ORS 701.046(1)(k)(E) requires inclusion on an application of information concerning "[a] conviction for a crime listed in ORS 701.098(1)(i) entered within five years preceding the application date."

Significantly, the fact of a conviction, in and of itself, cannot provide the basis for revocation of a license. In exercising its discretion, ORS 701.098(1)(i)(E) directs the CCB to do so "[c]onsistent with the provisions of ORS 670.280," which in turn requires that, in evaluating the fitness of a licensee, the CCB view the facts of the conviction and intervening circumstances in the context of the standards for the particular occupation or profession:

> "(2)   *** a licensing board, commission or agency may not deny, suspend or revoke an occupational or professional license solely for the reason that the applicant or licensee has been convicted of a crime, but it may consider the relationship of the facts which support the conviction and all intervening circumstances to the specific occupational or professional standards in determining the fitness of the person to receive or hold the license. ***

> "(3)   *** a licensing board, commission or agency may deny an occupational or professional license or impose discipline on a licensee based on conduct that is not undertaken directly in the course of the licensed activity, but that is substantially related to the fitness and ability of the applicant or licensee to engage in the activity for which the license is required. In determining whether the conduct is substantially related to the fitness and ability of the applicant or licensee to engage in the activity for which the license is required, the licensing board, commission or agency shall consider the relationship of the facts with respect to the conduct and all intervening circumstances to the specific occupational or professional standards."

ORS 670.280. Similarly, by administrative rule, the CCB requires:

> "In considering whether to revoke, suspend, or refuse to issue a license pursuant to ORS 701.098(1)(i)(A)-(I), the agency shall consider whether the applicant's or licensee's criminal conduct is substantially related to the fitness and ability of the applicant or licensee to engage in construction contracting."

OAR 812-005-0280(1).

Thus, the conviction of a crime in and of itself cannot be the basis for the revocation of an occupational license or for discipline. In determining fitness, the agency must

consider the facts supporting the conviction and the intervening circumstances and their relationship to the specific occupation or profession. ORS 670.280(2) (providing that an agency may consider the relationship of the facts of the crime of conviction and all intervening circumstances to specific occupational standards in evaluating a person's fitness to engage in a specific occupation). Additionally, conduct leading to the denial of an application or the imposition of discipline need not have been directed to the licensed activity, if it is "substantially related to the fitness and ability of the applicant or licensee to engage in the activity for which the license is required." ORS 670.280(3). The conduct's "substantial relationship" to fitness is to be determined based on "the relationship of the facts with respect to the conduct and all intervening circumstances to the specific occupational or professional standards." *Id.*

The CCB, thus, did not base its decision to revoke Allied's license or to impose a penalty solely on Koontz's sexual abuse conviction. The CCB's order shows that it considered the circumstances of that conviction, including Koontz's failure to report the conviction in connection with the prior license and his subsequent conduct, to reach the conclusion that Koontz and, through Koontz, Allied, were not fit to possess a contractor's license.

The CCB's determination of unfitness relied on ORS 701.102 and its own administrative rule. ORS 701.102(2)(d) provides:

> "The Construction Contractors Board may revoke, suspend or refuse to issue a license required under this chapter to a business if:
>
> "* * * * *
>
> "(d)  The board determines that an owner, officer or responsible managing individual of the business is not fit for licensure[.]"

The CCB has defined in OAR 812-005-0280(1) what constitutes fitness to engage in construction contracting:

> "(a)  Fitness to engage in construction contracting includes, but is not limited to the ability to:

"(A)   Refrain from violent, threatening, intimidating or sexually predatory behavior;

"(B)   Refrain from dishonest or fraudulent conduct; or

"(C)   Be financially responsible.

"(b)   Factors to be considered in denying or refusing to issue or renew a license include, but are not limited to, the date of the offense and the circumstances of the crime. In addition, factors relating to rehabilitation, or lack thereof, as evidenced by intervening events include, but are not limited to: failure to complete the criminal sentence, including probation or parole; failure to complete court ordered treatment; or failure to pay court ordered restitution."

The CCB's findings touched on several of the factors described in OAR 812-005-0280(1)(a) and (b), focusing primarily on Koontz's conduct since his release from custody. The CCB found that, since his release from custody, Koontz has not accepted responsibility for his crimes or engaged in sex offender treatment, as required by the conditions of his release; has refused to charge the GPS monitor that he is required to wear under the terms of his supervised release so that his movements can be monitored; and has placed himself in locations where children were found. The CCB found that Koontz sought to use Allied's construction license as a means to engage in sexually predatory behavior, by seeking to work near schools and other locations where children would gather, and that he could not refrain from sexually predatory behavior. The CCB did not err in its determination that Allied was not fit for licensure.

Allied contends in its fifth assignment of error that the CCB's findings are not supported by substantial evidence. We have reviewed the record and conclude that they are. Allied quarrels with inferences drawn by the CCB in weighing the evidence. For example, the CCB found that Koontz "refused to attend" sex offender treatment, which was a condition of his supervised release. Allied contends that the record shows that Koontz did not "refuse"; rather, he was "terminated based on a dispute with his provider." The CCB could reasonably interpret Koontz's conduct as a refusal. We further conclude that the CCB's findings and inferences are reasonably supported by the record and support the CCB's

conclusion that Koontz is unfit to be licensed as a construction contractor.[9]

*Challenge to penalty.* The remaining question, presented in Allied's fourth assignment of error, is whether the CCB has the statutory authority to impose a civil penalty based on a determination that a license applicant or licensee is unfit for licensure on the grounds of one of the qualifying criminal convictions listed in ORS 701.098(1)(i). Our answer to that question is no.

An agency's interpretation of the scope of authority granted to it by a statute, that is, its determination of the boundaries confining its ability to act, presents a question of statutory construction. Our review, accordingly, is governed by ORS 183.482(8)(a), which directs us to examine whether "the agency has erroneously interpreted a provision of law" and, if it has, to determine if "a correct interpretation compels a particular action." As always, a question of statutory interpretation is a question of law, making our review for legal error. *State v. Werner*, 292 Or App 397, 399, 424 P3d 809, *rev den*, 363 Or 744 (2018).

Before us, Allied advances the same argument that it made below. Focusing on the words of ORS 701.992, as it has all along, Allied argues that the plain terms of the statute authorize civil penalties only when a person has *violated* a provision of ORS chapter 701 or a CCB rule. Allied further contends that

"being 'unfit' in and of itself is not a violation of ORS chapter 701, and neither is being convicted of a crime (especially a crime committed prior to licensure). Therefore, because neither of these things are violations of CCB statutes or rules in and of themselves, they are not grounds for a civil

---

[9] Allied points out that OAR 812-005-0280(1)(b) provides that the factors listed in that subsection may be considered in determining whether to "deny[] or refus[e] to issue or renew" a license, not whether to revoke a license; therefore, Allied contends, the only relevant factor to Koontz's fitness is his ability to refrain from sexually predatory behavior. The fact that the listed criteria are among those that may be considered in determining whether to deny or refuse to issue or renew a license does not preclude the CCB from considering them in a proceeding to revoke a license. In any event, the CCB also concluded that Koontz was not able to refrain from sexually predatory behavior, a stand-alone basis for revocation.

penalty. The CCB is simply attempting to use the statute to punish Allied, not for any violation of actual CCB statutes, but rather for a crime that its RMI committed before it ever existed and which it was not required to report."

As was the case below, the CCB again does not engage with Allied's contention regarding the meaning of the word "violates" or explain how a determination of unfitness for licensure is something the legislature would have viewed as a "violation" of the statutes and rules governing construction contracting. Instead, the CCB responds with these three sentences:

"As noted in the previous response to assignment of error, ORS 701.098(1) specifically provides that the board may revoke or 'assess a civil penalty as provided in ORS 701.992' if the owner of a licensee has been convicted of specified crimes. Such a conviction is a violation of a provision of ORS chapter 701 for purposes of the civil penalty statute, ORS 701.992. The board did not err in imposing a civil penalty of $5000."

Although the CCB has not engaged meaningfully with the text of the relevant statutes throughout these proceedings, we must. Our well-defined role in this instance is to determine what "the enacting legislature most likely intended." *Tarr v. Multnomah County*, 306 Or App 26, 33, 473 P3d 603 (2020), *rev den*, 367 Or 496 (2021). And to determine that meaning, we examine the statutory "text, in context, and, where appropriate, legislative history and relevant canons of construction." *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014). That analysis here leads to the conclusion that the legislature did not intend to authorize the CCB to impose civil penalties based on a determination that a licensee or license applicant is not fit for licensure due to one of the convictions listed in ORS 701.098(1)(i).

ORS 701.992(1) provides:

"Except as provided in subsections (4) and (5) of this section, any person *who violates any provision of this chapter or any rule adopted by the Construction Contractors Board* shall forfeit and pay into the General Fund of the State Treasury a civil penalty in an amount determined by the board of not more than $5,000 for each offense."

(Emphasis added.) The question for us is whether a person "violates any provision of this chapter or any rule adopted by the Construction Contractors Board" when the person "has been convicted of one of the" offenses listed in ORS 701.098(1)(i) and that conviction bears on the person's fitness for licensure in the manner contemplated by ORS 670.280. Text and context answer that question.

The legislature has not supplied a specific definition of the word "violates" for purpose of ORS 701.992(1). We generally "assume that the legislature intended to give words of common usage their plain, natural, and ordinary meaning." *State v. Clemente-Perez*, 357 Or 745, 756, 359 P3d 232 (2015) (internal quotation marks omitted). The ordinary meaning of the word "violate" when talking about legal standards is "to fail to keep: BREAK, DISREGARD <~ the law>." *Webster's Third New Int'l Dictionary* 2554 (unabridged ed 2002). We are confident that the ordinary meaning is the one the legislature intended because, in this instance, the legislature has supplied a general definition of the word "violate" for the entirety of the Oregon Revised Statutes that is consistent with that ordinary understanding. According to ORS 174.100, "[a]s used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise[,] *** '[v]iolate' includes failure to comply." ORS 174.100(11).

Read in the most natural way, then, ORS 701.992 allows for a civil penalty only where a person has been found to have broken, disregarded, or "fail[ed] to comply" with a provision of ORS chapter 701 or a CCB rule. But no provision of ORS chapter 701 and no provision of the CCB rules *prohibits* a person from having a conviction or from being unfit, such that a person with the *status* of having been convicted or being unfit can be said in any ordinary way to have broken or disregarded a statute contained in chapter 701 or one of the CCB's administrative rules. Likewise, no statute in chapter 701 or CCB rule *requires* a license applicant or licensee to be conviction free, such that having a conviction can be said to be a "failure to comply" with a pertinent statute or rule.

That ORS 701.098(1)(i) gives the CCB the discretion to "revoke, suspend or refuse to reissue a license" based

on one of the specified convictions when, "consistent with the provisions of ORS 670.280," the conviction is indicative of unfitness for licensure, does not suggest otherwise. That is because a determination that someone's criminal record speaks to their current fitness for an occupation license is a different type of inquiry than a determination that a violation of a law is grounds for a penalty of some sort.[10] A fitness inquiry typically asks, *is this person presently fit to hold an occupational license in this field*? By contrast, a penalty inquiry asks, *did the person violate a statute or rule and, if so, should they be monetarily penalized*? Although evidence of violations of statutes and rules certainly will be relevant evidence in a fitness inquiry, that does not equate in any easy way to a conclusion that a person "violates" a statute or rule simply by being a person who is not fit to hold a license.

We take a side trip here, one we hope might ultimately prove helpful to our state's administrative agencies. It is worth observing that, to the extent its administrative rules are any indication, this distinction between finding someone unfit for licensure based on a conviction versus finding that someone has violated a CCB statute or rule and should be penalized with a monetary sanction is something the CCB appears to understand as a general matter.

The CCB has promulgated a fitness rule—OAR 812-005-0280—to govern licensing determinations based on fitness and has promulgated an entirely separate penalty rule—OAR 812-005-0800—to govern the assessment of monetary civil penalties. The fitness rule, among other things, requires the agency to assess whether a license applicant or licensee's criminal conduct "is substantially related to the fitness and ability of the applicant or licensee to engage

---

[10] Although it arose in a different context, the Supreme Court's explanation in *Cuff v. Department of Public Safety Standards*, 345 Or 462, 470, 198 P3d 931 (2008), of the nature of a fitness-for-licensure decision aids in understanding this point. As the court explained there, when taking into account past conduct in assessing fitness for professional licensure, an agency is determining how that conduct bears on the person's *present* fitness to hold an occupational license. *See generally id.* at 471-72. In other words, although a fitness inquiry may take into account whether a person has violated other laws, the ultimate determination is one of a person's present status of fitness for licensure, not a determination that the person has violated, that is, acted contrary to or failed to comply with another law.

in construction contracting" in determining whether the criminal conduct supplies grounds for a licensing decision. OAR 812-005-0280(1). In other words, the agency examines whether a person is presently fit to be a construction contractor, not whether the person has acted in disregard of a relevant statute or rule.

The CCB also has promulgated a detailed rule governing the imposition of civil penalties, one that, both now and at the time it imposed the penalty, provides and provided an admirably clear roadmap to the public on how it will exercise its penalty authority. *See* OAR 812-005-0800; *see also* OAR 812-005-0800 (July 1, 2014). The penalty rule contains no provisions authorizing the imposition of a civil penalty based either on the fact of a conviction, standing alone, or a determination of unfitness for licensure. Beyond that, each thing for which the rule does authorize a monetary penalty entails a breach of an identified statute, rule, or prohibition related to construction contracting, as reasonably might be expected of a rule adopted to implement a statute permitting the imposition of a civil penalty on someone who "violates" a CCB statute or rule. *See generally* OAR 812-005-0800.

There is no indication in this record that the CCB first looked to its own administrative rule governing civil penalties when evaluating the ALJ's determination that the CCB is not authorized to impose a civil penalty based on a determination that a license applicant or licensee is unfit for licensure due to a qualifying conviction. That omission appears to conflict with the Supreme Court's directive: "[A]dministrative rules, once made, must be followed, in order for the public to have a reliable road map as to the actions that its government claims to be entitled to take." *Marshall's Towing v. Department of State Police*, 339 Or 54, 58 n 5, 116 P3d 873 (2005).

Having visited the rules implementing the statute, we return to the statute. Context corroborates the plain text's message. ORS 701.098(1) states at its start that "[t]he Construction Contractors Board may revoke, suspend or refuse to issue or reissue a license and the board may assess

a civil penalty *as provided in ORS 701.992* if the board determines after notice and opportunity for a hearing" that one of 14 identified grounds is present. (Emphasis added.) Had the legislature intended, as the CCB apparently concluded in its order, that each of the identified grounds for a licensing action supply a basis for a civil penalty, there would have been no need for the legislature to refer to ORS 701.992. The fact that it did so indicates that the legislature intended for ORS 701.992 to control whether a ground for a particular licensing decision listed in ORS 701.098 was also a basis for a civil penalty, and did not intend to authorize a civil penalty for each and every identified basis for a licensing sanction.

Additionally, the plain terms of ORS 701.098(1) make the provision applicable to initial applications for licenses by persons who have never held them, providing that the CCB may "refuse to issue *** a license" based on the identified grounds. That means, under the CCB's and the dissenting opinion's take on things, the CCB could impose a $5,000 civil penalty on a person seeking to become a construction contractor, someone who has never been a part of the profession or done anything to violate CCB statutes or rules, just because that person honestly disclosed the fact of having a prior conviction listed in ORS 701.098(1)(i) and the CCB determined that the conviction made the person unfit for licensure. That does not seem to be a likely legislative objective, or a constitutional one. Although a citizen reasonably might anticipate being denied licensure based on prior criminal history, no one would suspect that honestly disclosing one's criminal history on an application for a professional license would mean paying not only any administrative application fee but also up to $5,000 more.

ORS 670.280 fortifies this contextual case. Recall: The operative wording of ORS 701.098(1)(i) states that the CCB "may revoke, suspend or refuse to issue or reissue a license and the board may assess a civil penalty as provided in ORS 701.992 if the board determines after notice and opportunity for a hearing *** [c]*onsistent with the provisions of ORS 670.280*" that the licensee, prospective licensee or relevant RMI has a listed criminal conviction. (Emphasis

added.) In turn, ORS 670.280(2) states, in relevant part, that

> "a licensing board, commission or agency may not deny, suspend or revoke an occupational or professional license solely for the reason that the applicant or licensee has been convicted of a crime, but it may consider the relationship of the facts which support the conviction and all intervening circumstances to the specific occupational or professional standards in determining the fitness of the person to receive or hold the license."

Noticeably absent from that provision addressing the role of convictions in licensing decisions is any suggestion that the legislature envisioned that licensing agencies would impose civil penalties based on the fact of a prior conviction. Instead, the provision signals a legislative intention to restrict licensing agencies' use of prior convictions and to ensure that prior convictions are used by licensing agencies only insofar as they bear on "the fitness of the person to receive or hold the license." ORS 670.280(2). It would not be "[c]onsistent with the provisions of ORS 670.280" to conclude that a prior conviction supplies a ground for a monetary penalty in addition to grounds for a licensing decision. Had the legislature intended for the fact of a conviction bearing on fitness for occupational licensure to supply grounds for a licensing agency to impose a monetary penalty based simply on the fitness determination, it seems likely that the legislature would have made mention of that possibility in ORS 670.280 when explaining how a licensing agency may use a conviction to assess fitness for licensure.

This textual and contextual inquiry is enough to resolve the question presented. The parties have not brought any relevant legislative history to our attention that would call that conclusion into question, and we are aware of none. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."). Beyond that, we note only that to construe ORS 701.992 to allow for the imposition of a civil penalty based solely on the status of having a conviction, or the status of being unfit for licensure, would raise some serious constitutional questions regarding double jeopardy

and due process, particularly given the fact that, as we have observed, that interpretation would mean that initial license applicants would be subject to civil penalties for prior convictions, despite having never done anything to violate a provision of chapter 701 or a CCB rule. That is yet one more reason to give ORS 701.992 its ordinary meaning, rather than an extraordinary one. *See State v. Bordeaux*, 220 Or App 165, 175-76, 185 P3d 524 (2008) (under the maxim of constitutional avoidance, "we assume that the legislature intended the construction that would *not* lead to possible constitutional problems" (emphasis in original)).

The dissenting opinion reaches a contrary conclusion primarily based on its view that "[t]he text of ORS 701.098 could not be more plain that each of the myriad of circumstances and misconduct described in ORS 701.098(1)(a) through (n) can constitute the basis for the assessment of a penalty." 311 Or App at 67 (Egan, C.J., concurring in part, dissenting in part). But as even the CCB reads the statutes, the penalty statute controls by virtue of the textural reference to it, making the question whether particular conduct "violates" CCB statutes and rules. In other words, not even the CCB contends, as the dissenting opinion concludes, that ORS 701.098 independently authorizes a civil penalty for each identified ground for a licensing decision. But, one way or another, the statute does not, as the dissenting opinion posits, plainly or unambiguously authorize monetary penalties for each of the identified grounds for licensing actions. And for all the reasons we have explained, we would decline to resolve the statutory ambiguity in a way that empowers the CCB to penalize status rather than violations of the statutes and rules regulating construction contracting.[11]

_____

[11] In asserting that ORS 701.098 is unambiguous, the dissenting opinion theorizes that the cross-reference to ORS 701.992 serves to incorporate procedure. 311 Or App at 68 (Egan, C.J., concurring in part, dissenting in part). That theory does not grapple with two critical aspects of context. First, ORS 701.992 contains both substantive and procedural provisions, but the legislature did not single out the procedural provisions when it cross-referenced ORS 701.992, making it questionable that the legislature solely intended to embrace the procedural provisions of ORS 701.992. Second, the procedure contained in ORS 701.992 is essentially the same as the procedure afforded by ORS 701.098, making the cross-reference unnecessary if its only purpose was to identify the applicable procedure. ORS 701.098 requires "notice and opportunity for hearing" when taking a licensing action under ORS 701.098(1). Under the Administrative Procedures Act, the hearing must be a contested case hearing. ORS 183.310 (2)(a)(C). ORS 701.992(2) specifies that "[c]ivil penalties under this section shall

We acknowledge that the statutes, as drafted, do not supply a crystalline guide to the legislature's intentions, and that our interpretation may lead to some repetition and minor redundancies. This particular legislative scheme is one that has been built and then remodeled by successive legislatures over the years, and it is not one that fits neatly together. Taking that into account, the best we can do is do our best to determine what "the enacting legislature most likely intended." *Tarr*, 306 Or App at 33. Here, as the CCB appears to have recognized in its own administrative rules, the text and context of ORS 701.992 indicate that the legislature likely intended that prior convictions demonstrating unfitness for licensure would not provide grounds for separate civil penalties. Given a choice between some small measure of redundancy and a construction that gives the CCB the sweeping power to impose fines based on status alone, the answer is easy. *See State v. Lively*, 294 Or App 377, 383, 430 P3d 1120 (2018) (noting that, "'in legal drafting, redundancy is a fairly common phenomenon'" (quoting *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 195, 211 P3d 297 (2009))).

This is not to say that this case did not involve conduct for which the CCB was statutorily authorized to impose civil penalties. As noted, the ALJ originally found that Allied had violated a CCB rule and imposed a civil penalty based on that finding of a violation. For reasons that are not immediately clear from the record, the CCB elected to withdraw that alleged violation and did not pursue any others. That was entirely within its discretion to do, but, in so doing, the CCB has left itself without a lawful basis for imposing a civil penalty in this case.

In sum, the CCB did not procedurally err and did not err in revoking Allied's license. In imposing the civil penalty, however, it erroneously interpreted ORS 701.992 when it concluded that its determination that Allied was unfit for licensure under ORS 701.098(1)(i)(E) meant that Allied had violated a provision of chapter 701 so as to allow for the imposition of a civil penalty under ORS 701.992. A correct

---

be imposed as provided in ORS 183.745." ORS 183.745, in turn, provides for notice and a contested case hearing whenever an agency proposes to impose a civil penalty. *See generally* ORS 183.745.

interpretation requires that the order be modified to set aside the civil penalty, something that ORS 183.482(8)(a)(A) gives us the authority to do. ORS 183.482(8)(a)(A) (court may "[s]et aside or modify the order" when correct interpretation of a provision of law "compels a particular action").

Order modified to set aside $5,000 civil penalty; otherwise affirmed.

**EGAN, C. J.,** concurring in part; dissenting in part.

I appreciate the majority's acknowledgment of the panel's contribution to the analysis of Allied's first, second, third, and fifth assignments of error, and I concur in its disposition of those assignments. I write separately to dissent from the majority's resolution of Allied's fourth assignment, because I conclude that the Construction Contractors Board (CCB) correctly determined that Allied could be assessed a penalty under ORS 701.098(1) for Koontz's qualifying conviction of sexual abuse during a prior period of licensure and his failure to report that conviction.

In its fourth assignment, Allied contends that the CCB exceeded its authority in assessing a penalty under ORS 701.098(1) based on Koontz's conviction for sexual abuse. The majority agrees with Allied, but does so, in my view, without a complete engagement with the statutory texts which, of course, set the parameters for the CCB's authority. As relevant here, ORS 701.098 provides:

"(1)   The Construction Contractors Board may revoke, suspend or refuse to issue or reissue a license *and the board may assess a civil penalty as provided in ORS 701.992* if the board determines after notice and opportunity for hearing:

"(a)   That the licensee or applicant has violated a provision of this chapter.

"(b)   That the licensee has violated a rule or order of the board.

"(c)   That the licensee has knowingly assisted an unlicensed person to act in violation of this chapter.

"(d)   That the licensee has knowingly assisted a licensed contractor to perform work for which the contractor is not properly endorsed.

"(e)   That a lien was filed on a structure under ORS 87.010 to 87.060 and 87.075 to 87.093 because the licensee or applicant wrongfully failed to perform a contractual duty to pay money to the person claiming the lien.

"(f)   That the licensee has knowingly provided false information to the board.

"(g)   That the licensee has worked without a construction permit where a permit is required and the work resulted in a complaint being filed with the board under ORS 701.139. ***

"(h)   That the number of licensed contractors working together on the same task on the same job site, where one of the contractors is classed as exempt under ORS 701.035 (2)(b), exceeded [statutory limits.]

"*****

"(i)   Consistent with the provisions of ORS 670.280, that the licensee or applicant, or an owner or officer of the licensee or applicant has been convicted of one of the following crimes in this state or an equivalent crime in another state:

"(A)   Murder;

"(B)   Assault in the first degree;

"(C)   Kidnapping;

"(D)    Rape, sodomy or unlawful sexual penetration;

"(E)   Sexual abuse;

"(F)   Arson in the first degree;

"(G)   Robbery in the first degree;

"(H)   Theft in the first degree; or

"(I)   Extortion.

"(j)   That the licensee or applicant has not, within 90 days after the date when payment was received from the public contracting agency, or contractor in the case of a subcontractor, made payment to any person for supplying labor or materials contracted for with a public contract for a public improvement plus the amount of interest due.

"(k)    That the licensee or applicant has repeatedly reported bad faith or false complaints of nonpayment against contractors or subcontractors.

"(L)    That the licensee or applicant has engaged in conduct as a contractor that is dishonest or fraudulent and that the board finds injurious to the welfare of the public.

"(m)    That the contractor has hired employees while licensed as exempt under ORS 701.035.

"(n)    That the contractor has utilized one or more workers supplied by a worker leasing company while licensed as exempt under ORS 701.035.

"(2)    The board may revoke, suspend or refuse to issue or reissue a license if the board determines after notice and opportunity for hearing that an applicant or licensee is unfit for licensure based upon information submitted to the board under ORS 701.046, submitted in a registration of securities described in ORS 701.046 (2) or discovered by a board investigation under ORS 701.225.

"(3)    The board may assess a civil penalty as provided in ORS 701.992 if the board determines after notice and opportunity for hearing that any person has violated ORS 701.021 [relating to licensing requirements].

"(4)(a)    The administrator of the board, in accordance with administrative rules adopted by the board and after setting forth specific reasons for the findings, may suspend or refuse to renew a license without hearing in any case where the administrator finds a serious danger to the public welfare, including but not limited to:

"(A)    Lack of a surety bond required by ORS 701.068;

"(B)    Lack of liability insurance required by ORS 701.073;

"(C)    Hiring employees while classed as exempt under ORS 701.035;

"(D)    Utilizing one or more workers supplied by a worker leasing company while classed as exempt under ORS 701.035;

"(E)    Conduct as a construction contractor that is dishonest or fraudulent; or

"(F)    Failure to pay a construction debt.

"\* \* \* \* \*

> "(5)(a)  In addition to all other remedies, if the board has reason to believe that a person is engaging in an act, practice or transaction that violates this chapter or a board rule, the board may issue an order directing the person to cease the act or to take corrective action."

(Emphasis added.) The text of ORS 701.098 could not be more plain that each of the myriad of circumstances and misconduct described in ORS 701.098(1)(a) through (n) can constitute the basis for the assessment of a penalty. As a textual matter, ORS 701.098(1) unambiguously authorizes the assessment of a penalty for Koontz's qualifying sexual abuse conviction.

    The subsection's context is consistent with that conclusion. Other subsections of ORS 701.098 describe consequences for other forms of misconduct. For example, ORS 701.098(3) states that a penalty may be assessed for "violation" of ORS 701.021, which describes licensure requirements (but does not explicitly describe noncompliance as a "violation"). ORS 701.098(2) authorizes consequences of revocation, suspension, or refusal to renew upon a finding of unfitness. ORS 701.098(4) authorizes consequences of suspension or refusal to renew upon a finding of lack of a surety bond or liability insurance; conduct that is dishonest or fraudulent; failure to pay a construction debt; or improper licensing. In short, the text of ORS 701.098(1) and its context show that the legislature knew how to describe authorized consequences, including penalties, for certain types of misconduct. I have no doubt that when the legislature stated in ORS 701.098(1) that the CCB may assess a penalty upon determining that a licensee had engaged in the misconduct described in that subsection, it meant to authorize penalties for the misconduct described in that subsection.

    The focus of the majority's reasoning is the proviso in ORS 701.098(1) that a penalty for the misconduct described in ORS 701.098(1)(a) to (n) may be assessed "as provided in ORS 701.992." ORS 701.992 states the procedures for the assessment of penalties and provides for the assessment of a civil penalty in an amount not to exceed $5,000 against

"any person who violates any provision of this chapter." The majority reasons that, because the types of misconduct listed in ORS 701.098(1) are not explicitly described in ORS 701.098 as "violations," they can only give rise to penalties if they are separately identified as violations *elsewhere* in ORS chapter 701. That reading of the statutory scheme cannot be correct.

First, as I view the reference in ORS 701.098(1) to ORS 701.992, it is not for the purpose of qualifying the misconduct subject to a penalty—that is already done in ORS 701.098(1). I would conclude that the reference in ORS 701.098(1) to ORS 701.992 is *to the procedures* set out in ORS 701.992 for the assessment of a penalty. That is the most plausible interpretation of ORS 701.098(1) in light of its text and context.[1]

But even assuming the correctness of the majority's view that ORS 701.992 determines the misconduct for which a penalty may be assessed under ORS 701.098(1), the CCB's assessment of a penalty here should be upheld. ORS 701.992 provides that a penalty up to $5,000 may be assessed against "any person *who violates any provision of this chapter*." (Emphasis added.) Contrary to the majority's assumption, statutory provisions that explicitly describe violations in ORS chapter 701 are not the only provisions of ORS chapter 701 that a person can violate. A section is violated by noncompliance. For example, ORS 701.098(3) states that a penalty may be assessed for "violation" of ORS 701.021, which describes licensure requirements but does not itself describe a "violation." And ORS 701.992 refers to misconduct described in ORS 701.098(1)(h) as a "violation," even though ORS 701.098(1)(h) itself does not explicitly identify that misconduct as a violation. *See* ORS 701.992(4) (setting forth sanctions for "violations" of ORS 701.098(1)(h)). ORS 701.098(1) need not explicitly state that the described misconducts and circumstances constitute "violations." That is

---

[1] The majority posits, regarding the significance of the cross-reference to ORS 701.992, that "not even the CCB contends, as the dissenting opinion concludes, that ORS 701.098 independently authorizes a civil penalty for each identified ground for a licensing decision." 311 Or App at 62. That is true. That is because the CCB agrees with our analysis, below, that a conviction listed in ORS 701.098(1)(i)(E) *is* a violation of ORS chapter 701.

implicit in the subsection's authorization of consequences, including penalties, for their occurrence.

It is clear to me that the reference in ORS 701.992 to violations of "any provision of this chapter" is intended to encompass the many types of misconduct described in ORS 701.098(1)(a) to (n). That, in my view, means that a person who has a qualifying criminal conviction for sexual abuse has "violated" ORS 701.098(1)(i) for purposes of ORS 701.992(1).

I do not share the majority's concern that the assessment of a penalty in this case was for the "status" of having a conviction; Koontz's unreported conviction for sexual abuse occurred during a prior period of licensure and constituted a violation of ORS 701.098(1).[2] The penalty for that misconduct should be upheld.

DeVore, Tookey, and Aoyagi, JJ., join in this concurrence in part and dissent in part.

---

[2] The majority is also concerned about the due process or double jeopardy implications of treating a "status" of having a former conviction as a violation. 311 Or App at 61-62. That argument is not raised by petitioner.