No. 8                     March 27, 2025                     289

IN THE SUPREME COURT OF THE
STATE OF OREGON

Irene GILBERT,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF ENERGY,
Oregon Energy Facility Siting Council,
and Idaho Power Company,
*Respondents.*

(SC S071487)


Irene GILBERT,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF ENERGY,
Oregon Energy Facility Siting Council,
and Idaho Power Company,
*Respondents.*

(SC S071520)


Kevin MARCH,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF ENERGY,
Oregon Energy Facility Siting Council,
and Idaho Power Company,
*Respondents.*

(SC S071521)


En Banc

On judicial review from a final order of the Energy Facility Siting Council.

Petitioner Irene Gilbert, La Grande, filed the petitions and briefs *pro se;* submitted on the briefs December 4, 2024 (S071487) and on December 24, 2024 (S071520).

Petitioner Kevin March, La Grande, filed the petition and brief *pro se;* submitted on the briefs December 24, 2024 (S071521).

Jordan R. Silk, Assistant Attorney General, Salem, filed the answering briefs for respondents on review Oregon Department of Energy and Oregon Energy Facility Siting Council. Also on the answering briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, Salem.

Sara Kobak, Schwabe, Williamson & Wyatt, P.C., Portland, filed the answering briefs for respondent on review Idaho Power Company. Also on the answering briefs were Andrew J. Lee, Schwabe, Williamson & Wyatt, P.C., Portland, and Jocelyn C. Pease, McDowell, Rackner & Gibson, P.C., Portland.

BUSHONG, J.

The final order of the Energy Facility Siting Council is affirmed.

**BUSHONG, J.**

Two petitioners challenge an amendment to the energy facility site certificate that we addressed in *Stop B2H Coalition v. Dept. of Energy*, 370 Or 792, 525 P3d 864 (2023), regarding the construction of a high-voltage electrical transmission line from Boardman, Oregon, to Hemingway, Idaho.[1] In *Stop B2H*, we affirmed the Energy Facility Siting Council's (EFSC) order granting Idaho Power Company's (Idaho Power) request for a site certificate to construct that transmission line. EFSC subsequently approved Idaho Power's request to amend that site certificate. Petitioners challenge the process that EFSC followed in addressing Idaho Power's requested amendment, and, in two respects, the substance of that amendment.

Regarding process, petitioners contend that they were entitled to a contested case proceeding to address the substantive issues they have raised, and petitioner Gilbert also contends that the circuit court—not this court—has jurisdiction to decide that issue.[2] Petitioners contend in their substantive challenges that: (1) the amended site certificate does not comply with the rules governing the form and amount of the required bond; and (2) the amendment could allow construction within the expanded area without requiring Idaho Power to comply with legal protections for watersheds and fish and wildlife habitats.

As we will explain, we conclude that we have jurisdiction to address petitioners' process challenge, and we reject that challenge. We also reject petitioners' substantive challenges because: (1) the challenge to the form and the amount of the required bond is untimely, because the bond was set in the original site certificate that we approved in *Stop B2H* and was not changed by the recent amendment;

---

[1] Two petitioners have filed three different petitions challenging the approval of the amended site certificate: case numbers S071487 and S071520, both filed by petitioner Irene Gilbert (Gilbert), and case number S071521, filed by petitioner Kevin March (March). The Energy Facility Siting Council and the Department of Energy have appeared in opposition. We consolidate the three petitions for purposes of this opinion, and, except where noted, refer to Gilbert and March collectively as "petitioners."

[2] Gilbert indicated that she did not dismiss her petition in this court and file in the circuit court because EFSC and Idaho Power insisted that she had to file her petition in this court.

and (2) under the governing rules and EFSC's order, Idaho Power is not permitted to engage in any construction activity in the additional areas that the amendment added to the site boundary. Accordingly, we affirm EFSC's order approving the amended site certificate.

## I.   BACKGROUND

Oregon law provides for "a comprehensive system for the siting, monitoring and regulating of the location, construction and operation of all energy facilities in this state." ORS 469.310. Under that system, a party who seeks to build an "energy facility" must obtain authority—known as a "site certificate"—from EFSC before it can proceed. *See* ORS 469.300(11) (defining "energy facility"); ORS 469.320 (site certificate requirement). Because a high-voltage electricity transmission line is generally considered an "energy facility" under ORS 469.300(11), Idaho Power was required by Oregon law to obtain a site certificate from EFSC before it could construct the line. In *Stop B2H*, we summarized the statutory scheme that governed EFSC's decision to approve Idaho Power's request for a site certificate, *see* 370 Or at 795-97 (discussing statutes), and the process that led EFSC to issue a site certificate for this transmission line, *id.* at 797-800.

Specifically, as we explained in *Stop B2H*, the site certificate process began when Idaho Power gave notice of its intent to seek a site certificate in 2008. *Id.* at 797-98. That was followed by years of public meetings and the participation of 17 different public agencies, *id.* at 798; a contested case proceeding with about 50 petitioners, *id.* at 799; and, ultimately, a final order by EFSC approving the site certificate, *id.* at 799-800. Three parties petitioned this court to review the final order, and we ultimately affirmed EFSC's order approving the site certificate. *Id.* at 795, 821.

Idaho Power subsequently asked EFSC to approve an amendment to the site certificate to expand the site boundary and make other changes. Petitioners filed separate objections and requested contested case proceedings to address their concerns. EFSC denied their requests for contested case proceedings and approved Idaho Power's request

to amend the site certificate.[3] Petitioners challenge those decisions in this court.

## II.  DISCUSSION

As noted above, petitioners assert process and substantive challenges to EFSC's orders denying them contested case proceedings and approving Idaho Power's request to amend the site certificate. We review EFSC's orders for errors of law in its legal decisions, for lack of substantial evidence in its factual findings, and for abuse of discretion in any exercises of discretion. ORS 469.403(6); ORS 183.482(7), (8); *see Stop B2H*, 370 Or at 800 (so noting). We begin with petitioners' process challenge.

### A.  *Petitioners' Request for a Contested Case Proceeding*

As noted above, petitioners contend that they were entitled to contested case proceedings to address their various concerns about Idaho Power's amendment request. An EFSC rule, OAR 345-027-0371, sets out the process for parties to seek a contested case proceeding in connection with a proposed amendment to a site certificate. Before addressing whether petitioners were entitled to contested cases under that rule, however, we must first address petitioner Gilbert's contention that we lack jurisdiction to decide that issue.

#### 1.  *Gilbert's challenge to Supreme Court's jurisdiction*

Gilbert contends that the circuit court, and not this court, has jurisdiction to review EFSC's decision to deny her request for a contested case proceeding. We disagree.

Oregon law gives this court exclusive jurisdiction to review an EFSC order that approves or rejects an amended site certificate. *See* ORS 469.403(3) ("Jurisdiction for judicial review of [EFSC's] approval or rejection of an application for a site certificate *or amended site certificate* is conferred upon the Supreme Court." (Emphasis added.)). That jurisdiction necessarily includes jurisdiction to review the process followed by EFSC in deciding whether to approve or reject the amendment to the site certificate.

---

[3] The amendment at issue here is the second amendment to the original site certificate. EFSC had previously approved the first amendment, and no party challenged that decision in this court.

Our case law supports that proposition, albeit implicitly. In *Blue Mountain Alliance v. Energy Facility Siting*, 353 Or 465, 300 P3d 1203 (2013), the petitioners challenged EFSC's approval of an amended site certificate to construct a wind energy facility. Among other things, the petitioners contended that EFSC had erred when it denied their requests for a contested case proceeding. We addressed that contention on the merits, concluding that EFSC "did not err in rejecting [the] petitioners' requests for a contested case proceeding." *Id.* at 496. Although no party challenged our jurisdiction, we could not have addressed petitioners' argument on the merits if we lacked jurisdiction. The fact that we addressed the merits of the petitioners' arguments thus implies that we recognized our jurisdiction to do so.[4]

In arguing that the circuit court, not this court, has jurisdiction to decide whether EFSC erred in denying petitioners' request for a contested case proceeding, Gilbert relies on the Court of Appeals' decision in *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 314 Or App 143, 498 P3d 875 (2021), *rev den*, 369 Or 338 (2022) (*Friends II*). The petitioners in *Friends II* filed an action in circuit court challenging EFSC's orders denying them a contested case proceeding. The circuit court transferred the case to the Court of Appeals pursuant to ORS 14.165(1)(b) to decide "which court has jurisdiction to provide judicial review" of the challenged orders. *Id.* at 144. The Court of Appeals concluded that the challenged orders had been issued in "other than contested cases," so "the circuit court—not [the Court of Appeals]—ha[d] jurisdiction" under ORS 183.484(1). *Id.* at 153. In reaching that conclusion, the court stated in a footnote that ORS 469.403(3)—the statute giving the Supreme Court exclusive jurisdiction over the approval or rejection of applications to amend a site certificate—did not apply,

---

[4] Our decision in *Blue Mountain Alliance* is consistent with other decisions of this court. For example, in *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 377, 121 P3d 1141 (2005), we concluded that, although ORS 469.403 did not allow petitioners to "directly challenge [EFSC's] denial of their request for rulemaking in this proceeding," that statute gave this court jurisdiction to consider whether "the absence of rules renders [EFSC's] final order invalid." In *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 394-95, 446 P3d 53 (2019) (*Friends I*), exercising jurisdiction under ORS 469.403, we struck down EFSC rules that had impermissibly limited judicial review of cases that had not gone through contested case proceedings.

because the petitioners in that case "d[id] not seek judicial review of EFSC's 'approval or rejection of an application for a[n] *** amended site certificate.'" *Id.* at 146 n 4 (quoting ORS 469.403(3)).

This court is not bound by that Court of Appeals' decision. But even assuming that *Friends II* was correctly decided, it would not apply here, because petitioners in this case are, in effect, seeking review of EFSC's approval of Idaho Power's application for an amended site certificate.

We hold now, as we implicitly determined in *Blue Mountain Alliance*, that this court has jurisdiction to address a petitioner's contention that EFSC erred in denying a request for a contested case proceeding on objections to a proposed amendment to a site certificate. We turn to the merits.

   2.  *Petitioners' contention that they should have been given contested case proceedings*

Under the governing rule, EFSC is required to give a contested case proceeding in connection with the type of site certificate amendment at issue here only if the request "raises a significant issue of fact or law that is reasonably likely to affect [EFSC's] determination whether the facility, with the change proposed by the amendment, meets the applicable laws and [EFSC] standards." OAR 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(9).[5]

Petitioners contend that they were entitled to contested case proceedings because the two substantive issues they raise—(1) whether Idaho Power has met the bonding requirement of OAR 345-022-0050, and (2) whether the site boundary should be expanded as proposed in the amendment—are "significant issue[s] of fact or law" that are "reasonably likely to affect" EFSC's decision on the proposed site certificate amendment. We disagree.

Petitioner Gilbert's challenge to the bond provisions does not present a "significant issue of fact or law" that could

---

[5] EFSC has established different review processes for different types of amendments. *See* OAR 345-027-0351 (establishing review processes called "type A," "type B," and "type C"). Because EFSC here gave Idaho Power's request for amendment Type A review, OAR 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 applies. *See* OAR 345-027-0351(2) (making that rule applicable, among others, to Type A review).

affect EFSC's decision on the proposed amendment.[6] As discussed in more detail later in this opinion, Gilbert argues that Idaho Power should not be allowed to post a nominal bond for part of the facility's expected life. But that condition of the bond was approved years ago, in the original site certificate. In the amendment before us, EFSC determined that it did not need to revisit its earlier determination that a nominal bond for that portion of the facility's life was adequate.

Thus, Gilbert's objection to the form and amount of the bond is, in effect, a challenge to the bond terms established in the original site certificate. That challenge is untimely. Under ORS 469.403(3), a challenge to the final order approving Idaho Power's application for a site certificate must be filed "within 60 days after the date of service of [EFSC's] final order or within 30 days after the date the petition for rehearing is denied or deemed denied." That period has long expired. Indeed, Gilbert was one of the parties that filed a timely challenge to the final order approving Idaho Power's application for a site certificate, and we addressed the merits of the challenge in *Stop B2H*. If Gilbert wanted to challenge the form or amount of the bond, she should have included that challenge in her petition in *Stop B2H*.

Petitioners' challenge to the expansion of the site boundary does not present a "significant issue of fact or law" either. Petitioners contend that the final order unlawfully approves adding areas to the existing site boundary without the surveys required to assess the impacts construction would have on watersheds and fish and wildlife habitat. By doing so, petitioners contend, Idaho Power will be able to shortcut otherwise mandatory processes required for future changes. That argument *sounds* significant, but closer examination reveals that it is not. As we will explain, the argument misunderstands the effect of the amendment and the relationship between those areas within the "site boundary" where construction is permitted—known as the "micrositing corridors"—and the areas where construction is not permitted.[7]

---

[6] Petitioner March does not challenge the bond.

[7] Under the governing rule, a "site boundary" is "the perimeter of the site of a proposed energy facility, its related or supporting facilities, all temporary laydown and staging areas and all corridors and micrositing corridors proposed by the applicant." OAR 345-001-0010(31). A "micrositing corridor" is "a continuous

Under the governing rule and EFSC's order, all construction that occurs within the "site boundary" must occur within a "micrositing corridor." *See* OAR 345-001-0010(21) (micrositing corridor is "area of land within which construction of facility components may occur"). The amendment that EFSC approved expanded the "site boundary" but it did not authorize construction outside the boundaries of any existing "micrositing corridors." The final order approving Idaho Power's proposed amendment confirmed that (1) Idaho Power was "limited to locating facility components within the approved micrositing areas, subject to site certificate conditions"; and (2) Idaho Power was *not* authorized "to locate facility components within the expanded site boundary."

The "surveys" and "mandatory processes" that petitioners fear will be ignored or subject to "shortcuts" are those that apply to construction that must occur within the "micrositing corridors." Because petitioners do not challenge any changes to the boundaries of the "micrositing corridors," the surveys and other processes that, by law, apply to construction have not changed. It follows that petitioners' requests for contested case proceedings to address the expanded site boundaries do not present a significant issue of fact or law that had to be addressed in a contested case proceeding.

B. *Petitioners' Substantive Challenges to EFSC's Final Order*

Although petitioners' challenges primarily focus on EFSC's denial of their requests for contested case proceedings, their petitions and briefing can also be understood to contend that EFSC's order is legally erroneous in two respects that this court should address even in the absence of a contested case proceeding. First, petitioner Gilbert argues that the bond is legally insufficient. Second, both petitioners assert that the expanded site boundary approved in the amendment would allow Idaho Power to carry out future construction in the expanded areas that

---

area of land within which construction of facility components may occur, subject to site certificate conditions." OAR 345-001-0010(21).

might unlawfully and adversely affect watersheds and fish and wildlife habitats.

Those arguments overlap with the petitioners' primary challenge: that EFSC should have given them contested case proceedings to address their concerns. Regardless, the arguments fail, as we will explain in more detail below. We begin with Gilbert's challenge to the form and amount of the bond.

1.  *Gilbert's challenge to the bond*

Under the governing rules, Idaho Power cannot begin constructing the facility until it submits a bond or letter of credit "in a form and amount satisfactory to [EFSC] to restore the site to a useful, non-hazardous condition." OAR 345-025-0006(8); *see also* OAR 345-022-0050(1) (EFSC cannot approve a site certificate application without finding that the site can be restored adequately to a useful, non-hazardous condition after construction ends or the facility is no longer operated); OAR 345-022-0050(2) (applicant must demonstrate "a reasonable likelihood" of obtaining a bond or letter of credit to pay for that restoration).

In its final order approving the original site certificate in 2022, EFSC made extensive findings and conclusions regarding the appropriate bond for this facility. EFSC estimated at that time that the total cost to restore the site to a useful, non-hazardous condition would be $141 million in 2016 dollars. It found that the useful life of the transmission line facility was 100 years, and that there was very little likelihood that the transmission line would be retired early. It also concluded that Idaho Power was very unlikely to default because, as a regulated public utility, it could pass on any decommissioning costs to its customers.

EFSC's final order set different bonding requirements for different phases of the project. The first phase was the construction period. Across the estimated construction time, Idaho Power was required to post a bond that steadily rose to equal the full amount of restoration costs, to account for the possibility that the facility might never become operative. EFSC determined, however, that, after the facility began operating, a nominal $1 bond would be sufficient for

the first 50 years of the 100-year estimated lifetime. EFSC explained that a $1 nominal bond for the first 50 years of operation would be "satisfactory" given the "very low" "risk that the facility would be abandoned or retired after construction and before 50 years of service." For the last 50 years of operation, EFSC required the bond amount to rise annually, until by year 100 the bond amount would be the full decommissioning cost. EFSC retained authority to adjust the bond upward to the total decommissioning cost, and it required Idaho Power to report on that matter every five years.

In addressing Idaho Power's request to amend the site certificate, EFSC noted that, under the rule governing amendments, it was required to determine whether the amount of the bond required by the original site certificate "is adequate" given the proposed amendment. OAR 345-027-0375(2)(e).[8] EFSC concluded that that rule required it to (1) determine what additional steps, if any, Idaho Power would need to take to restore the site as a result of the changes made by the proposed amendment; (2) determine the updated restoration costs for the whole facility; and (3) examine any updated evidence of Idaho Power's ability to obtain a bond.

On the first point, EFSC found that the acts needed to restore the site if the proposed amendment was approved were "substantially similar" to those already required by the original site certificate. On the second point, EFSC found that the updated costs to restore the entire facility was $170 million in 2024 dollars. EFSC expressly added that the changes proposed by the amendment did not otherwise affect EFSC's prior determination that a $1 bond for the first 50 years of the facility life was sufficient.[9] Finally,

_____

[8] OAR 345-027-0375 provides in relevant part:

"(2) To issue an amended site certificate, [EFSC] must determine that the preponderance of evidence on the record supports the following conclusions:

"* * * * *

"(e) For all requests for amendment, the amount of the bond or letter of credit required under OAR 345-022-0050 is adequate."

[9] EFSC reiterated the reasons for its prior finding that a $1 nominal bond for the first 50 years of operation, and explained why the proposed amendment would not affect its prior conclusion. Specifically, EFSC stated that the bond

EFSC explained that an approved financial institution had indicated it was willing and able to issue a bond to Idaho Power for up to $180 million.

Gilbert's arguments about the bond go to provisions that were established in the original site certificate: specifically, the nominal $1 bond for the first 50 years of the facility's operation. She argues that, as a matter of law, OAR 345-027-0375(2)(e) always requires a bond for the full amount of the restoration costs. But that argument addresses a condition set in the original site certificate that was not changed by the amendment. Accordingly, Gilbert's challenge to that provision is untimely.

Gilbert also contends that EFSC had applied a "balancing test," contrary to OAR 345-022-0000(2), when it concluded that a nominal $1 bond was "adequate." Again, that challenge is untimely, and Gilbert has not explained how the amendment's minor revisions to the bond requirement—largely limited to updating the expected restoration costs—invalidated EFSC's earlier finding of adequacy. Instead, as indicated above, Gilbert's arguments challenge EFSC's original bond determination and, accordingly, are untimely.

Moreover, Gilbert's argument also fails on the merits. The rule she relies on provides in part as follows:

> "[EFSC] may issue or amend a site certificate for a facility that does not meet one or more of the applicable standards adopted under ORS 469.501 if [EFSC] determines that the overall public benefits of the facility outweigh any adverse effects on a resource or interest protected by the applicable standards the facility does not meet."

That rule does not apply to EFSC's decision here. EFSC did not determine that the bond failed to meet "applicable standards," nor did it find that the overall public benefits of the facility outweighed any such failure. Instead, EFSC determined that the bond was adequate given the proposed amendment, and Gilbert has not shown any error in that determination. EFSC was not required to—and did

provisions "are not impacted" by the changes it approved in the amendment and noted that it had approved the bond approach "twice in the last two years" after issuing the original site certificate. Under those circumstances, EFSC found no reason to change that aspect of the bond.

not—decide that the "overall public benefits" outweighed any adverse effects caused by the facility's failure to meet some applicable standard relating to the bond.

Finally, to the extent Gilbert is contending that the nominal amount of the bond during the first 50 years of operation is just unreasonable under the circumstances, that argument goes to whether EFSC had abused its discretion in determining that the "form and amount" of the bond for that 50-year period was "satisfactory." *See* OAR 345-025-0006(8). But, as we have explained, the adequacy of a nominal $1 bond had been approved by EFSC in its 2022 final order approving the original site certificate. The time to challenge that decision has long since expired. ORS 469.403(3). If Gilbert wanted to challenge the bond as "unreasonable," she should have included that challenge in a timely petition that we could have addressed in *Stop B2H*.

### 2. *Petitioners' challenge to the expanded site boundary*

Petitioners' challenge focuses on the new areas within the expanded site boundary—but outside the micrositing corridors—resulting from the amendment. They contend that those areas have not been surveyed to determine the effects construction would have on watersheds and fish and wildlife habitats, as required by Oregon law, and they worry that construction in those areas might occur under the amendment.[10] That argument fails because, as explained above, construction is not allowed outside the micrositing corridors even after the amendment.[11]

In arguing that construction might be allowed in the expanded area outside the micrositing corridors without any of the required surveys, petitioners misunderstand the governing rules (and one statute). First, they misread OAR 345-027-0375(2)(a) to always require surveys to the

---

[10] March's arguments are similar to Gilbert's, though he focuses specifically on watersheds and fish and wildlife habitats. We address those arguments together.

[11] Surveys on the effects that construction and operation within the amended micrositing corridors would have on watersheds and fish and wildlife habitats either have already been completed, or they will be completed before construction begins. Petitioners do not challenge those surveys.

full extent of the expanded site boundary. But the rule only requires surveys to ensure compliance with all laws and EFSC standards for "*the portion of the facility within* the area added to the site by the amendment." (Emphasis added.)[12] As explained above, no "portion of the facility" can be placed "within the area added to the site by the amendment" to the site boundary. Idaho Power can only construct the facility *within the micrositing corridors*, and petitioners do not challenge construction within those corridors.

Second, petitioner Gilbert suggests that Idaho Power would be able to engage in future construction in those areas without full review because, she claims, the amendment would allow Idaho Power to utilize a "truly expedited" form of review known as "Type C" review for that future construction. *See* OAR 345-027-0380 (setting out requirements for Type C review); *Friends of Columbia Gorge v. Energy Fac. Siting Coun.*, 365 Or 371, 375, 446 P3d 53 (2019) (*Friends I*) (characterizing Type C review as "truly expedited").[13]

But EFSC's order did not authorize Idaho Power to use Type C review for any future construction, nor did it authorize any future construction outside the micrositing corridors. Type C review is *only* available if a site certificate holder seeks a change for part of the facility "not yet in operation, but *approved for construction* in the site certificate or amended site certificate." OAR 345-027-0380(1) (emphasis added). Again, the second amended site certificate does not

---

[12] OAR 345-027-0375(2)(a) provides, "For a request for amendment proposing to add new area to the site boundary, the portion of the facility within the area added to the site by the amendment complies with all laws and [EFSC] standards applicable to an original site certificate application[.]"

[13] More specifically, when a site certificate holder seeks a change to a site certificate, it files an "amendment determination request." OAR 345-027-0357. The Department of Energy determines which of three possible types of review must follow. *See* OAR 345-027-0351.

The full form of review is Type A review. OAR 345-027-0351(2). It is the "default review process." *Id.*

The expedited form of review is Type B review. OAR 345-027-0351(3); *see Friends I*, 365 Or at 375 (characterizing Type B review as "expedited"). The Department of Energy and EFSC must consider a number of identified factors before they can approve Type B review. *See* OAR 345-027-0357(8) (listing factors).

The "truly expedited" form of review is Type C review, OAR 345-027-0351(4), which is available only in very limited circumstances, OAR 345-027-0380(1).

approve any construction outside the micrositing corridors. Because no construction outside the micrositing corridors has been "approved for construction in the site certificate or amended site certificate," any request by Idaho Power to construct outside the micrositing corridors cannot qualify for expedited Type C review. Nothing in the final order provides otherwise.[14]

Finally, petitioners also suggest that ORS 469.320(5) means that the expanded site boundary will *automatically* permit Idaho Power to carry on construction in the newly added areas without any further review. But that is a misreading of the statute.

The only arguably applicable provision of that statute, ORS 469.320(5)(b), provides that a separate site certificate is not required for "[e]xpansion within the site or within the energy generation area of a facility for which a site certificate has been issued, if the existing site certificate has been amended to authorize expansion[.]" Petitioners seem to be equating "expansion" with "construction," suggesting that, by expanding the site boundary, EFSC is implicitly authorizing "construction" outside the existing micrositing corridors. That is incorrect. The existing site certificate has *not* been "amended to authorize" any construction in the areas of the expanded site boundary that are outside the existing micrositing corridors.

---

[14] EFSC imposed an additional condition if Idaho Power later seeks approval to construct outside the micrositing corridors. Petitioners may have mistakenly concluded that that condition was the *only* condition imposed for that construction.

Petitioners identify New General Standard of Review Condition 12 (GEN-GS-07; AMD2) as the source of the claim that Idaho Power can now obtain Type C review. Under the amended Condition 12, if Idaho Power asks for permission to construct outside the micrositing corridors, it must "provide evidence of private landowner consent of changes on their property."

EFSC added that requirement to "memorialize [Idaho Power's] representation and intent to coordinate with landowners to accommodate the facility and related or supporting facilities on their land." But that was an additional condition that Idaho Power would have to comply with *if* it decides to request permission to construct outside the micrositing corridors. It was *not* an approval to construct outside the micrositing corridors, nor was it the *only* requirement that Idaho Power would have to comply with if it decided to request that approval. Condition 12 also expressly required Idaho Power to request changes under OAR 345-027-0357, which results in either Type A, Type B, or Type C review. *See* 373 Or at 302 n 13. Again, Type C review definitionally would not be available.

### III.   CONCLUSION

For the reasons discussed, we conclude that (1) we have jurisdiction over the petitions for judicial review challenging EFSC's denial of a contested case proceeding; (2) EFSC did not err in denying petitioners a contested case proceeding; (3) EFSC did not err in concluding that the existing form of bond is adequate to address the amendment; and (4) EFSC did not err in expanding the site boundary.

The final order of the Energy Facility Siting Council is affirmed.